Stanley Gartenstein, J.
The enactment of section 392 of the • Social Services Law providing for review of foster care placements at least once every two years in this court, has created, in the short term since its effective date, an entirely new field of law with substantial legal issues going to the very heart of the Family Court process. Many of these issues are now raised in an omnibus motion which brings the entire concept and effectiveness of this section as a working tool of this court into focus.
THE FACTS
The infant Carla was born in February, 1966 and is now eight years old. She was voluntarily committed to the Commissioner of Social Services by her biological mother who could not care for her because of severe physical and emotional problems. She has been with the same foster parents since she was one month old and is a well-adjusted child in the framework of the foster family. The within proceeding is the first to review the foster care status of Carla. The natural mother opposes an extension of foster care as requested. She claims she has made known her willingness and ability to care for the child and cites her apparently excellent care of her other child, now four years old. It is charged that the obstacle to reunion of Carla with her biological mother is not her unfitness to care for her, but the foster parents’ determination to adopt.
section 392
Proceedings under section 392 are the first instance of a conferral of exclusive original jurisdiction upon this court by any statutory scheme other than as contained in the Family Court Act proper.[1] Its original purpose appears to have been fiscal in nature as a spur to the resolution of situations where foster care and the higher attendant expense thereof to the taxpayers (as opposed to possible adoptions of the same children or return to their biological parents and the lower cost to the taxpayers attendant thereon) might have been allowed to continue indefinitely. The court is given no power to affect the status of any persons before it nor to adjudicate any rights as between them on the merits. The section ¡simply gives the court the right to make one of four dispositions bearing in mind the respective interests of the taxpayers, child, foster parents, natural parents, child care agency, and the Commissioner. These are:'
a — continuation of foster care;
*365 h — continuation of foster ¡care with a direction that proceedings be taken to legally free the child for adoption;
c — continuation of foster care with a direction that a legally free child be placed for adoption;
d — discharge of the child to the biological parent.
Hanging as it does, outside the physical confines of the Family Court Act, this jurisdictional statute makes no reference to any auxiliary adjective statute. Nor does it, owing to its original limited scope, contain any machinery which might avoid lengthy proceedings for the narrow statutory purpose only to compel the same parties to relitigate the same issues in another branch of the court in order to establish their ¡status or effectuate their rights. Not even the basic Family Court Act has been made applicable to these proceedings, nor, by inference (see Family Ct. Act, § 165) any appropriate provisions of the CPLft. It might even be argued that the inclusion in section 392 of the one right to an order of protection, the only right ordinarily available in this court so granted (see subd. 8), might, by inference, be construed to exclude other remedies otherwise available in this court. Nor, to carry an argument to extremes, is there any statutory authority mandating any application of the rules of evidence; or the right to issue process; or even a provision for review on appeal. Obviously, these are legislative oversights. The question is, do they render the statute defective as a possible deprivation of due process of law?
MOTIONS BEFORE THE COURT
The biological mother moves for relief, requesting in seriatim:
1. that these proceedings be dismissed outright because of laches and the child immediately discharged to her;
2. that the court grant disclosure to the natural mother in the form of an order permitting inspection of the complete case record maintained by the agency overseeing foster care;
3. that the court transfer all proceedings to the Family Court of Bronx County, on the grounds that the natural mother has a phobia of travel which prevents her participation in proceedings in this county.
section 392: constitutionality; inherent power of the COURT
The first motion to dismiss because of laches raises ¿ disturbing argument which goes to the heart of section 392. Briefly, it is argued that, until its enactment, no remedy existed for a mother whose children had been voluntarily placed; that faced *366 with an agency’s refusal to return a child, or even to make his whereabouts known, a biological parent had nowhere to turn other than a writ of habeas corpus in the Supreme Court, a proceeding in which the burden was on the petitioner to establish a sophisticated legal case and which required representation by counsel. It is further argued that under most circumcumstances, those who must place children temporarily are the impoverished, who have no access to counsel or the sophistication to obtain free legal aid to the indigent. The biological mother submits that, with the enactment of section 392 which places upon the agencies the burden of seeking review, the Legislature intended to make an order continuing foster care the sole basis for withholding custody of a child from his biological parent. Lacking timely application for review as mandated by statute, the biological parent urges a dismissal cf these proceedings with a direction that the child be forthwith returned. Impliedly, this argument, addressed to the ‘ ‘ defective ’ ’ nature of the petition, makes the issue one of parental rights against contractual agency rights emanating from the original agreement and incidentals thereof. It submits that the issue made relevant by statute does not include any room for an adjudication based upon the best interests of the child despite the catch phrase of subdivision 7 to that effect; that the “ best interests ” criteria is constricted by the narrow “ one in four ” choice given the court by statute, thus indicating a legislative intent to pay only lip service to the best interests ’ ’ criteria. Finally, it claims that compelling the natural mother to go through this proceeding — perhaps to prevail — without giving her the additional benefit of an adjudication on the merits of hers and the child’s status constitutes a constitutionally defective deprivation of due process of law.
Two aspects of this argument require the court’s attention. First, does the doctrine of laches apply when the best interests of the child are at stake? We hold in the negative. There can be no parental property right in a child regardless of the relative weakness or strength of a statutory scheme for review of foster care. The interests of a child exist independently of those of its parents and must be held to override them. (Matter of Lincoln v. Lincoln, 24 N Y 2d 270.)
So much is basic. We must, however, consider the fact that courts are more and more being confronted with the insoluble dilemma of children, who by whatever means, grow up in homes other than those of their biological parents and whose psychological well-being will be devastated by removal from the only *367 homes they know. The court recognizes that placements are sometimes effectuated by dealings with zealous, well-meaning persons whose interests coincide with their concept of the child’s best welfare but who sometimes take steps not sanctioned by law under circumstances where a biological mother may not fully understand the impact of her actions in placing a child. Can the desire to lend every effort of the court to see to it that a biological mother is granted due process of law defeat the “ equity ” (for want of a better word) built up by a child and its foster parents in the status quo 1 We must conclude in the negative. The solution to the problems raised rests in the diligence of the Department of Social Services and the effective functioning of the court’s review procedures under this section. It. is also parenthetically noted that section 392 has now been joined by section 358-a of the Social Services Law providing for review of all voluntary placements within 30 days of removal of a child. Hopefully, when the backlog is eliminated and the review machinery working smoothly, these considerations will be academic. Until that time, however, the court must accept the undeniable compromise position that, as between two persons entitled to the protection of the court, the interests of the weaker must be protected with greater zeal. In short, we hold, as we must, that the ‘ ‘ ¡best interests of the child ’ ’ criteria is not merely a descriptive statutory phrase, but an expression of that which must be given overriding concern.
The second argument concerning the ineffectiveness of this proceeding to affect status and/or provide a determination on the merits is well taken. However, despite the fact that constitutionality has been raised in this argument, the real thrust of this attack against the statute ¡centers around its sometimes ineffectual terms. The court does not view this passing argument as a threat to constitutionality. First, there is the basic caveat that ‘1 Particularly, courts of first instance should not exercise transcendent power of declaring an act of the Legislature unconstitutional ” (National Psychological Assn. v. University of State of N. Y., 18 Misc 2d 722, 725-726, affd. 10 A D 2d 688, affd. 8 N Y 2d 197, app. dsmd. 365 U. ,S. 298). There is also the fact that this statute simply creates new jurisdiction in an established ¡court. Nothing is disturbed by this new enactment. No new rights are conferred; none taken away. The equal protection clause is not violated by a diversity in jurisdiction as between courts or between different parts of the same court (Missouri v. Lewis, 101 U. S. 22). Nor is a statute rendered defective simply because it may discriminate or operate *368 harshly against some litigants (Shielcrawt v. Moffett, 49 N. Y. S. 2d 64, affd. 268 App. Div. 352, revd. other grounds 294 N. Y. 180, mot. for rearg. den. 294 N. Y. 840). What is really under attack therefore is not constitutionality but fairness and effectiveness.
These considerations inevitably lead to an examination of those powers traditionally .held by courts and the judiciary which are considered inherent. The most basic, proposition is that a court has inherent power of self-preservation (see Ex parte United States, 101 F. 2d 870, affd. sub nom. United States v. Stone, 308 U. S. 519). Pursuant thereto, there is the auxiliary power to make determinations which are meaningful and effective (United States v. Kelly, 55 F. 2d 67; Small v. Delaney, 175 Misc. 795) so that a grant of .statutory power and/or jurisdiction must imply a conferral of power to do all things necessary to the administration of justice within the scope of this jurisdiction (Matter of Canal and Walker Sts., 12 N. Y. 406). Further, when new powers are granted to a court, they become ipso facto a part of its general authority and powers incidental thereto attach at once to the new subject (Bangs v. Duckinfield, 18 N. Y. 592). In point of fact, that which is implied by the court in a statute is as much a part of it as its express terms (United States v. Jones, 204 F. 2d 745). Finally, the court has inherent power to take any necessary step in a cause (Long v. Long, 196 Misc. 982) and to exercise plenary control of its own processes (Lowry v. Himmler, 136 Misc. 215) so that litigants are given the opportunity to have a full, wide-sweeping and comprehensive adjudication of their rights (Langan v. First Trust & Deposit Co., 270 App. Div. 700).
We hold that these, powers must be exercised to prevent futility of proceedings before us. Thus, while ostensibly we must defer to another part of this court to terminate parental rights (Social Services Law, § 384 and Family Ct. Act, § 611), or render a decision as to custody, to approve an adoption, or to conduct neglect proceedings, we are not without remedy to fill in the legislative gaps.
We hold first as the most basic of propositions that the Family Court Act applies to proceedings pursuant to section 392 of the Social Services Law. We further hold that section 165 of the Family Court Act making the CPLR applicable to this court where “ appropriate ” also gives it such additional powers required by the unique nature of this court such as may be found in the CPLR but not in the Family Court Act. As stated in Schwartz v. Schwartz (23 A D 2d 204) the CPLR may be utilized *369 in this court as a working tool to facilitate its statutory mandate but not as an impediment to its smooth functioning.
Thus, litigation pursuant to this jurisdictional statute will not be open-ended without result. When facts come before the court in which findings may be made under the Family Court Act, whatever the nature of the proceeding, the court has inherent powers to temporarily halt its litigation; to direct the commencement of appropriate proceedings; to consolidate or sever where necessary; and to make any other order which would facilitate the broad powers for the protection of juveniles before it such as granted by the Family Court Act. While it is true that litigation is ordinarily not directed by a court, nor does it consolidate or direct other procedural remedies on its own motion (see Practice Commentary by Joseph M. McLaughlin in McKinney’s Cons. Laws of N. Y., Book 7B, CPLB. 602), it is also true that this court does not function as a passive arbiter but has a positive statutory duty to direct the commencement of proceedings before it (see Family Ct. Act, § 1032 and Social Services Law, § 392) and to act affirmatively as an advocate for the rights of children over whom it has jurisdiction.[2]
The court sees no unfairness in this statute as so viewed, let alone unconstitutionality. Whatever its defects, it fills a needed void. What is required is positive thinking and the patience, to let if work. The motion is denied.
DISCLOSURE: LIBERALITY VS. STATUTORY PROHIBITION
The biological mother moves in the alternative for an order granting her the right to inspect the agency case record. She claims that, failing knowledge of its contents, it will be impossible to prepare for trial and to meet the burden of going forward to rebut the staggering quantum of raw data which is in the possession of her adversaries.
The portion of the. Social Services Law which mandates the compilation of this ease record on the one hand, and the conditions under which it may be disclosed on the other, is section 372, the pertinent portions of which follow:
“ 1. Every court, and every public board, commission, institution, or officer having powers or charged with duties in relation to abandoned, delinquent, destitute, neglected or depend *370 ent children who shall receive, accept or commit any child shall provide and keep a record showing: * * *
“ (j) the reasons for any act performed in reference to such child herein required to be recorded, together with such further information as the board may require; and shall make to the board upon blanks provided by the board reports of each such child placed out, or boarded out, containing the information herein required to be kept; and shall furnish such information to any authorized agency to which any such child shall be committed or otherwise given into custody. # *
“ 4. * * * Such records kept by the board shall be deemed confidential and shall be safeguarded from coming to the knowledge of and from inspection or examination by any person other than one authorized, by the board or by a justice of the supreme court after a notice to all interested persons and a hearing, to receive .such knowledge or to make such inspection or examination. No person shall divulge the information thus obtained without authorization so to do by the board, or by such justice”.
Clearly, disclosure is forbidden without consent of the Social Services authorities or an order of a “ justice of the supreme court ” (emphasis added). The movant concedes that the specific language of the statute apparently excludes an order of this court but argues that a conferral of plenary jurisdiction upon this court over custody of minors, first by an amendment to section 651 of the Family Court Act, and more recently, by a constitutional amendment ratifying this statute, renders the order of this court equal to that of the Supreme Court. It is further claimed that this court often acts as a surrogate for the Supreme Court on referral from that court with all its prerogatives and powers (see Family Ct. Act, § 464) and that in the light of this reality, the wording of the statute is merely a matter of semantics. We disagree. There has never existed in the range of judicial prerogatives discretion to arrogate the power to rewrite a statute outright.
Movant cites Matter of Scott (67 Misc 2d 64) and Dunlap v. Talbot Perkins’ Children’s Serv. (N. Y. L. J., Nov. 21, 1973, p. 17, col. 6) in support of the proposition that this court, in the light of liberality of disclosure statutes, may now disregard the language of section 372. Scott was a matter decided in the Surrogate’s Court of New York County involving a proceeding under section 384 of the Social Services Law in which the Surrogate held that he could act as a Justice of the Supreme Court. The court stated (p. 66): “ Even though subdivision 4 of section 372 of the Social Services Law refers to the Supreme Court, *371 the commitment has been sought in this court which should dispose of the motion as relating to the main issue. CPLR 3120 states a notice may be served and under CPLR 3122 a motion can then be made for a protective order. The same result has been reached by the procedure herein adopted by a motion in the first instance and affidavits in opposition thereto. It would seem ridiculous to relegate the parties to another court on this incidental phase of the application ’ ’.
In Dunlap, the Supreme Court denied an application for disclosure pursuant to section 372 without prejudice to an application for same in the Family Court. This decision has been interpreted as an implied holding that this court has jurisdiction under subdivision 4 of section 372.
Despite the relaxation of the rules of disclosure alluded to by both the learned Surrogate and Supreme Court Justice, this court is still faced with specific statutory language reading “ justice of the supreme court ”.
The court is of the opinion that it is possible to grant this relief without distorting the statute to say what it obviously does not say.
It is fundamental that we are here confronted with a statutory privilege running in favor of the Commissioner of Social Services (or “ board ” as the statute now reads). It is also basic that any child care agency acting on behalf of the commissioner in the receipt and care of children does so in his name, place and stead as his alter ego.
As we pointed out in Matter of Gigi B. (71 Misc 2d 176) any privileged communication, even one providing for absolute statutory immunity as a matter of law, may be waived (Regan v. National Postal Transp. Assn., 53 Misc 2d 901). The waiver need not be overt or conscious but may be spelled out by acts committed by a party otherwise entitled to assert the privilege. (Lynch v. Mutual Life Ins. Co., 55 Misc 2d 179; Mancinelli v. Texas Eastern Transmission Corp., 34 A D 2d 535). Finally, partial waiver of a privilege effectively waives the entirety thereof (Clark v. Geraci, 29 Misc 2d 791).
We construe the act of the agency in submitting its application for review to be a waiver on its own behalf. We further construe the filing of the written petition by the commissioner to be an act of waiver on his part. In enacting .section 392, the Legislature could not have contemplated a grant of jurisdiction to review (literally, “to see again”) without the necessary auxiliary power to examine that which it is called upon to “ see again ”. Obviously, section 392, first enacted in 1971, postdates *372 section 372, parts of which can be traced back to the Laws of 1884. If the requirement that the commissioner file proceedings under section 392 has the effect of granting the commissioner’s limited consent to disclosure of the case record as delineated in the alternative provision of subdivision 4 of section 372, the Legislature is presumed to know that this more recent enactment would inevitably have such effect on the older statute and is deemed to have intended this result.[3]
The court also recognizes that the commissioner and agencies are litigants — in the words of the CPLR, “ parties ” — and it is cognizant of a fundamental difference between a “ party ” and a “witness ” as regards the duty of disclosure. (See CPLR art. 31 et seq.) A “ party ” holds a higher interest in litigation and is subject to a concomitant increased susceptibility to an order of disclosure.
Finally, it is in order to point out that every proceeding in this court is confidential (Family Ct. Act, § 166) and that all reports of a social nature received by the court may either be kept absolutely confidential or may be disclosed by the court in its discretion. It thus follows logically that even should this motion be granted, all material before this court is still protected by the blanket privilege under the control of the court.
The court therefore holds, without diminishing the statutory requirement as to a “justice of the supreme court”, and in pursuance of the alternate authorization contained in subdivision 4 of section 372, that disclosure as prayed for is granted. The record shall be delivered to the Clerk of court under seal to be kept under his exclusive custody. Counsel may arrange for inspection thereof either jointly, or upon their consent by written stipulation, individually. The Clerk will make isame available only under court auspices. No extracts or copies may be made from the record nor may the contents thereof be disclosed to the respective litigants. It is the intention of the court *373 that counsel examine same to enable adequate representation on the trial. It is not its intention to have potentially psychologically damaging information shared with the litigants. The attorneys shall conform to these directions as officers of the court.
VENUE
Finally, as to the motion for change of venue, the affidavit of the natural mother’s consulting psychiatrist contains, on its face, sufficient grounds for the within relief. Its factual matter has not been disputed.
Subdivision 3 of section 392 mandates that the petition for review be filed in the county where the authorized agency has its principal office. It is argued that the requirement of filing does not include any mandate that subsequent proceedings be conducted in that county. The court notes that a proceeding in the Family Court is commenced by the filing of a petition (Family Ct, Act, |§ 423, 523, 614, 731, 821, 1031). The word “filed” in subdivision 3 of section 392 of the Social Services Law may therefore be construed as referring to the commencement of proceedings. An examination of the CPLR venue statutes points up the distinction between a proceeding in which the venue requirements, are in terms of place where commenced (CPLR 506) and an action in which the venue requirements are in terms of the place of trial (CPLR 501, 503, 504, 505, 507). It is thus clear that the statute mandates only that a proceeding be, commenced in the county where the agéncy has its principal place of business and that this motion is properly before the court.
However, it is equally clear that the Bronx County proceedings under this section are held in the same physical courthouse as those of New York County and that an act of transfer would be a futile exercise.
The motion is therefore denied, without prejudice to an application for a modest grant for transportation costs under the auspices of the Susan Wagner Memorial Fund, which will be determined on'the sole basis of the natural mother’s indigence and her special psychological needs.
The Clerk is directed to recalendar for plenary hearing upon stipulation by counsel that disclosure has been completed; or, in the alternative, should a stipulation not be feasible, upon the application of any interested party, but in any event, not moré than 30 days from the date of this order.

. We exclude truancy proceedings under the Education Law which are usually brought either under article 7 or article 10 of the Family Court Act.

. There appears to be a legislative recognition of this situation. A bill now pending in both houses (S 609; A 3411) would amend sections 611, 614 and 615 of the Family Court Act to allow a party or the court on its own motion to direct, during proceedings to terminate parental rights, the filing of adoption proceedings and to consolidate same with the pending matter.

. Subsequent to the argument of these proceedings, the Supreme Court, County of New York in Matter of Ruff (N. Y. L. J., Feb. 22, 1974, p. 18, col. 3 [Evans, J.]) denied an application for inspection of the case record in that matter on the theory that proceedings pursuant to section 392 of the Social Services Law were pending. Mr. Justice Evans was of the opinion that section 165 of the Family Court Act making the CPLR applicable to this court grants the authority to order disclosure under subdivision 4 of section 372 of the Social Services Law. While the result is the same, this court respectfully dissents from the reasoning therein which arrives at its conclusion based upon a dilution of the words “ justice of the supreme court ” rather than on the basis of implied waiver of the statutory privilege by acts of the commissioner. It is also interesting to note Justice Evans’ assumption as to the applicability of the Family Court Act and the CPLR to section 392 proceedings.