OPINION OF THE COURT
Phoebe K. Greenbaum, J.
This is an action brought pursuant to section 384-b of the Social Services Law and article 6 of the Family Court Act by the petitioner, Brooklyn Home for Children, an authorized foster care agency, for the permanent termination of parental rights of the natural parents of Dana Marie E. and Lemuell George E. (so that they may be freed for adoption). The instant proceeding was commenced on March 3, 1983 by the filing of the petitions in the Queens County Family Court.
On May 23, 1983 the respondent mother Pearl E. and respondent Stephen B., alleged putative father of Dana Marie E., did not appear and both were held to be in default. Respondent Lawrence F., alleged putative father *113 of Lemuell George E., appeared with his attorney and advised the court that he will contest the petition for termination of his parental rights. A new administrative directive of the Family Court effective January 31, 1983 requires that the trials of all contested termination of parental rights cases be referred to a new city-wide trial part, operating as Part III of the Foster Care Review Term at New York County Family Court. As respondents Pearl E. and Stephen B. have defaulted, the trial will only concern the termination of parental rights of Lawrence F. as the natural father of Lemuell George E. The petitioner makes this motion to challenge the “venue” of the trial of the within matter in New York County. The instant motion then only concerns docket number B.944/83 which is being contested solely by the putative father of Lemuell George E. An inquest may be held as to docket number B.943/83 in regard to the natural parents of Dana Marie E. grounded upon proper service.
By its motion, petitioner moves this court for (1) an order setting down the within matter for trial in the Queens County Family Court, and (2) a determination that “venue” of the within matter properly lies in Queens County and not New York County.
None of the other parties to the within proceeding have joined petitioner’s motion nor have they submitted any papers in opposition thereto.
Upon review and consideration of the petitioner’s motion submitted on June 28, 1983 and all other pleadings and proceedings herein, the motion is disposed of as follows:
(1) petitioner’s request for an order setting down the within matter for trial in the Family Court of Queens County is denied; and
(2) the transmittal of the within matter to a central hearing part in Family Court, New York County, for a hearing is proper and not violative of law.
Before considering the merits of petitioner’s motion, the court deems it necessary to comment upon the word “venue” as utilized by the statute relevant to the determination of the within motion.
*114 As the within proceeding concerns the termination of parental rights, the applicable “venue” provisions are contained in section 384-b (subd 3, par [c]) of the Social Services Law which were derived from former section 613 of the Family Court Act which was repealed on January 1, 1977.
The subject matter of former section 613 of the Family Court Act is now covered by section 384-b (subd 3, par [c]) of the Social Services Law which states: “Proceedings under this section shall be originated in the county in which the authorized agency has an office for the regular conduct of business or in which the child or his parent resides at the time of the initiation of the proceeding.” (Emphasis added.)
The court notes that a proceeding under section 384-b of the Social Services Law in the Family Court is “originated” by the filing of a petition. The word “originated” as used in section 384-b (subd 3, par [c]) may therefore be construed as referring only to the commencement of proceedings. It is thus clear that section 384-b (subd 3, par [c]) mandates only that a termination of parental rights proceeding be comjnenced in the county where the authorized agency has its place of business or where the child or his parent resides. The court finds that the requirement directing where the proceeding shall be “originated” does not include any mandate that subsequent proceedings be conducted in that county. (See Matter of Carla L., 77 Misc 2d 363, mod on other grounds 45 AD2d 375.)
Furthermore, the court finds that the general venue provisions of article 1 of the Family Court Act, which includes section 174 thereof, are not controlling in the within proceeding insofar as those sections conflict with the specific venue provisions of section 384-b of the Social Services Law. Such a conflict is prohibited by section 384-b (subd 3, par [f]) of the Social Services Law.
Six points of law in support of the motion have been advanced by petitioner’s counsel. They are treated separately in this decision, albeit, slightly out of order beginning with petitioner’s point II followed by points III, IV, I, V and VI.
*115 A
Petitioner’s “point II” in support of its motion is that it was within its legal right, pursuant to section 384-b (subd 3, par [c]) of the Social Services Law to file the within petitions in the Family Court of Queens County. The court does not dispute petitioner on this point and finds that petitioner is indeed an authorized foster care agency having its place of business in Queens County as is required by section 384-b (subd 3, par [c]) of the Social Services Law.
B
Petitioner’s “point III” is that the only county where the within matter shall have originated is Queens County. For the following reasons, the court finds that the within matter could have properly been originated in the Family Court of New York County by the Commissioner of Social Services for the City of New York.
Under section 384-b (subd 3, par [b]) of the Social Services Law: “A proceeding under this section may be originated by an authorized agency or by a foster parent authorized to do so pursuant to section three hundred ninety-two of this chapter or to section one thousand fifty-five of the family court act.” (Emphasis added.)
An “authorized agency” is defined by subdivision 10 of section 371 of the Social Services Law and under paragraph (b) thereof may include: “(b) Any court or any public welfare official of this state authorized by law to place out or to board out children” (emphasis added).
A clarification as to who is included under the definition stated in section 371 (subd 10, par [b]) of the Social Services Law is stated in McKinney’s Consolidated Laws of New York (Book 52A, Social Services Law, § 371, p 12, Historical Note): “References to Public Welfare Districts and Officials. Section 5 of L. 1967, c. 728, provides, inter alia, that references to public welfare districts and officials shall be deemed to mean and refer to social services districts and officials, respectively.” (Emphasis added.)
Subdivision 14 of section 2 of the Social Services Law states that: “Social services official shall mean a county commissioner of social services, a city commissioner of social services, a town social services officer or city social *116 services officer to whom the power or duty referred to is assigned under the provisions of this chapter. In any law where reference is made by any title to an official charged with the duty of caring for the poor in a town, city or county, it shall be understood as referring to the one of the above mentioned social services officials on whom the power or duty referred to is conferred under the provisions of this chapter.” (Emphasis added.)
Subdivision 9 of section 2 of the Social Services Law states that: “City commissioner of social services shall mean the city officer, board or commission, by whatever title known, having authority to give the public assistance and care for the administration of which a city social services district is responsible.” (Emphasis added.)
Finally, the authority of a city commissioner of social services to place out or board out children (especially neglected, abused or abandoned children) can be found in section 398 (subd 6, par [g]) of the Social Services Law which states in relevant part: “Commissioners of public welfare and city public welfare officers responsible under the provisions of a special or local law for the children hereinafter specified shall have powers and perform duties as follows: * * * (g) Place children in suitable instances in family homes, agency boarding homes or group homes or institutions under the proper safeguards, either directly or through authorized agencies”.
It is clear from the foregoing definitions and statutes that the Commissioner of Social Services of the City of New York (hereinafter Commissioner) is an “authorized agency” under section 384-b (subd 3, par [b]) of the Social Services Law and may have originated the within proceeding. Furthermore, “it is * * * basic that any child care agency acting on behalf of the commissioner in the receipt and care of children does so in his name, place and stead as his alter ego.” (Matter of Carla L., 77 Misc 2d 363, 371, supra.)
As the Commissioner is the true legal custodian of the child Lemuell George E. and the Commissioner’s office (“place of business”) is located in New York County, then *117 the Commissioner “may” have originated the within proceeding in New York County pursuant to the requirements of section 384-b (subd 3, par [c]) of the Social Services Law.
For the reasons cited above, the court finds that point III of petitioner’s motion is not a proper basis upon which to grant the relief requested.
C
“Point IV” of petitioner’s motion asserts that pursuant to section 174 of the Family Court Act the Queens County Family Court lacks the power or authority to “transfer” the within proceeding to any other county. This section of the Family Court Act provides: “The family court in a county may for good cause transfer a proceeding to a family court in any other county where the proceeding may have been originated and shall transfer a proceeding laying venue in the wrong county to a family court in any county where the proceeding might have been originated.” (Emphasis added.)
With regard to the matter of Lemuell George E., the new administrative directive refers only the trial to New York County from Queens County. Does such an action by the Queens County Family Court constitute a “transfer” under section 174 of the Family Court Act?
With regard to what is the general effect of a “transfer,” there has been relatively little discussion in the reported cases of this question. Generally it appears that after a “transfer,” the transferring court has no further jurisdiction in the proceeding nor authority to take any other action in relation to the matters transferred. (Mather v Ginsroe, Inc., 45 Misc 2d 674; Matter of Desimone v New York State Liq. Auth., 12 AD2d 998; Matter of Hanover v New York State Policemen’s & Firemen’s Retirement System, 60 AD2d 696, affd 45 NY2d 907.) In other words, a “transfer” severs all connections that the transferring court had with a proceeding and irrevocably gives them to the transferee court. Therefore, a “transfer” speaks to a change in venue and acts to remove all aspects of a proceeding to another county. Here, if the new administrative directive were construed to be a “transfer” the effect would be to remove the within matter from the docket books of *118 the Queens County Family Court and to place it on the docket books of the New York County Family Court so that it permanently becomes a New York County case which is never to return to Queens County for any purpose.
It remains then for the court to determine whether operation of the new administrative directive creates a “transfer” with regard to the within matter.
By a memorandum dated January 27, 1983 the Clerk of the Queens County Family Court has promulgated guidelines to implement the new administrative directive. In relevant part, those guidelines provide that:
“1. All Queens County termination proceedings shall continue to be filed in this court.
“2. Issuance of process shall be done by this court.
“3. Upon return of process all contested proceedings must be referred to the new part. Inquests shall be disposed of in this court. * * *
“6. Only the Assistant Administrative Judge can order a proceeding transmitted to the new part.
“7. If a proceeding in a trial part for inquest subsequently develops into a contested matter it must be referred to the Assistant Administrative Judge for transmittal to the new part.
“8. The Queens County 18-b panel shall be used when assignment of counsel to respondents is necessary.
“9. Law Guardian assignments shall be the Queens County Family Court unit.
“10. When the Assistant Administrative Judge orders a proceeding transmitted to the new part the Part Clerk shall direct a court officer to bring the court file and all the attorneys to Room 405.” (Emphasis added.)
In addition to these guidelines, the court has been advised by the law assistant assigned to Part III that any orders made after the trial in New York County Family Court are to be entered on the docket books of the county Family Court in which the petition was filed.
The key word utilized by the above memorandum is “transmittal”. According to the Clerk of Queens County Family Court, the word “transmittal” is an internal administrative term which is distinct from a “transfer”. A *119 “transmittal” only refers part of a proceeding to a different county for a specific and limited purpose. After the limited purpose has been completed, the proceeding is returned to its county of origination for further disposition. An example of a long-standing administrative use of transmittals within the five counties which comprise the Family Court of the City of New York can be found in the rotation system of Judges. In New York City, Family Court Judges are designated as Judges of the Family Court of the State of New York, the City of New York. New York City Family Court Judges are rotated periodically, as necessary, to fill trial parts of one of the five county Family Courts. The rationale behind this administrative practice is that generally there is not the same ratio of Family Court Judges who reside in a county as there are trial parts in a particular county Family Court.
In practice, Judge X may be rotated from New York County to Queens County at the end of a Trial Term, yet one or more trials (which are referred to as fact-finding hearings in the Family Court) may be in progress before Judge X in New York County. These hearings in progress would follow Judge X to Queens County for the continuation of the fact-finding hearing. Under these circumstances the proceedings are “transmitted” to Queens County for trial but retain their New York County docket number and are returned to the Family Court of New York County after the hearings in Queens have been completed.
With regard to the within matter, only the trial is being referred to the Family Court of New York County and the case will be returned to the Family Court of Queens County after the trial so that any orders can be entered on the docket books there. Therefore, a “transmittal” differs from a “transfer.”
As the new administrative directive does not create a “transfer”, the court finds that section 174 of the Family Court Act is inapplicable to the disposition of this motion.
For the reasons stated below, the court further finds that section 174 of the Family Court Act is not applicable to the within proceeding because that statute conflicts with the Legislature’s finding and intent as stated in section 384-b (subd 1, par [b]) of the Social Services Law and, as section *120 174 is a provision of article 1 of the Family Court Act, such a conflict is prohibited by section 384-b (subd 3, par [f]) of the Social Services Law.
Prior to the establishment of the new city-wide trial part the hearing was conducted piecemeal as the calendar would permit because a contested termination of parental rights case is usually a long hearing which requires testimony of case workers and frequently psychiatrists or psychologists and a review of numerous foster care records as well as medical and psychiatric records. Generally, the petitioning agency alleged more than one cause of action which further extended the length of time necessary to conduct a fact-finding hearing. Consequently, by remaining in an all-purpose part of a county Family Court the hearing was stretched out over several days or several months or perhaps several years. The end result of holding fact-finding hearings in a county Family Court was a protracted hearing process which delayed resolution of an innocent child’s status. The child remained in foster care for an extended period of time, very often more than a year, thus diminishing his opportunities for adoption. Obviously, such results were not intended by the Legislature under section 384-b (subd 1, par [b]) of the Social Services Law which states:
“(b) The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.
“It is the intent of the legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interest, needs, and rights of the child by terminating parental rights and freeing the child for adoption.” (Emphasis added.)
*121 As the court must look at all of the statutes which affect the within matter, including the Family Court Act and the Social Services Law, it may properly consider the Legislature’s findings and intent as stated in section 384-b (subd 1, par [b]) of the Social Services Law for the purposes of deciding petitioner’s motion.
Since hearings of termination of parental rights cases are usually protracted over several months or more when conducted in an all-purpose trial part of a county Family Court, the court holds that the place of trial of this type of proceeding should not be determined solely by factors such as those stated in section 174 of the Family Court Act but rather by considerations such as holding the trial at a place where it can be heard and completed in a minimum amount of time. Such considerations serve to promote the best interests of the innocent child on whose behalf the petition was filed and to reinforce the purposes for which the Family Court was established, that is, as “a special agency for the care and protection of the young and the preservation of the family.” (Committee Comments, Joint Legislative Committee on Court Reorganization, Report II, Family Ct Act, p 2; see, also, Matter of Fusco v Roth, 100 Misc 2d 288, 293.) Even if the trial were placed pursuant to the provisions of section 174 of the Family Court Act, the aforesaid considerations would certainly come within the meaning of “good cause” as those words are used in that statute.
According to information provided to the court by the law assistant assigned to Part III of the Foster Care Review Term, the average length of a termination of parental rights hearing is 1 to 3 consecutive days. The city-wide trial part only hears matters pertaining to contested termination of parental rights. Consequently, since the trial is able to be continued on a day-to-day basis, the city-wide part does not hear any other matters until the trial before it is completed. To further expedite the trial, a pretrial conference is held by the law assistant for the purposes of framing and narrowing the issues and reviewing documentary evidence. The pretrial conference also serves as a device to gauge the expected duration of the trial. On the day of the trial, usually no more than three cases are *122 scheduled on the part’s calendar. These measures enable the city-wide trial part to operate quickly and efficiently and assist in providing a timely procedure for the contested termination of parental rights in appropriate cases.
Section 384-b (subd 3, par [f]) of the Social Services Law states that: “In any proceeding under this section in which the Family Court has exercised jurisdiction, the provisions of articles one, two and eleven of the family court act shall apply to the extent that they do not conflict with the specific provisions of this section.”
Section 174 of the Family Court Act is a provision of article 1 thereof.
The application of section 174 of the Family Court Act to the within proceeding will have the effect of retaining the trial in an all-purpose part of the Queens County Family Court which would prevent the most expeditious resolution of the status of Lemuell George E. Such an effect conflicts with the specific statement of legislative finding stated in section 384-b (subd 1, par [b]) of the Social Services Law by preventing the establishment and operation of a “timely procedure for the termination, in appropriate cases, of the rights of the natural parents” and thus increases the unnecessary protracted stay of Lemuell George E. with the petitioner who is an authorized foster care agency.
The transmittal of the trial of the within matter to a citywide trial part meets and furthers the specific legislative finding stated in section 384-b (subd 1, par [b]) of the Social Services Law. Wherefore, the court concludes that section 174 of the Family Court Act is inapplicable to the within proceeding as it conflicts with the specific provision of section 384-b (subd 1, par [b]) of the Social Services Law. Such a conflict is prohibited by section 384-b (subd 3, par [f]) of the Social Services Law.
Even if this court were to find that the new administrative directive created a “transfer”, thereby making section 174 of the Family Court Act applicable to the within motion, such a “transfer” is proper. As was shown in section B of this decision, the within proceeding could have been originated in New York County by the Commissioner of Social Services of the City of New York. Furthermore, *123 “good cause” exists in that holding the hearings of contested termination of parental rights cases at a city-wide trial part in New York County Family Court will serve a public policy need by expediting the resolution of the subject innocent child.
Wherefore, for all the reasons stated above the court finds that petitioner’s “point IV” is not a proper basis upon which to grant the within motion.
D
The court now turns to petitioner’s “point I.”
A principal contention of the petitioner is that the procedure placing the trial of the within matter at a city-wide trial part of the New York County Family Court is unconstitutional pursuant to article VI (§ 19, subd h) of the Constitution of the State of New York which provides as follows: “As may be provided by law, the county court, the surrogate’s court, the family court and the courts for the city of New York established pursuant to section fifteen of this article may transfer any action or proceeding, other than one which has previously been transferred to it, to any other court, except the supreme court, having jurisdiction of the subject matter in any other judicial district or county provided that such other court has jurisdiction over the classes of persons named as parties.” (Emphasis added.)
Petitioner contends that, “It is clear from the foregoing that the Family Court has no inherent power or authority to transfer any action or proceeding to other courts unless it has been granted such power or authority by statute.” Petitioner has not cited any case law in support of its interpretation of article VI (§19, subd h) of the State Constitution.
The controlling word of this statute is “transfer”. For all of the reasons stated in section C herein, the court finds that the new administrative directive creates a “transmittal” of the within matter and not a “transfer”. Wherefore, the court finds that article VI (§ 19, subd h) of the New York Constitution is inapplicable to the disposition of the within motion.
Even if operation of the new administrative directive was held to create a “transfer”, thereby making article VI (§ 19, subd h) of the State Constitution applicable to this *124 motion, such a “transfer” is proper as it is “provided by law” under section 174 of the Family Court Act in that, as stated in section B herein, the within proceeding might have been originated in New York County by the Commissioner of Social Services of the City of New York who has his offices in New York County. (See, also, Matter of Schneider v Schneider, 72 Misc 2d 423, where an entire Uniform Support of Dependents Law proceeding was “transferred” from Family Court, Kings County, to Family Court, Niagara County, pursuant to NY Const, art VI, § 19, subd h.) In Schneider, the transfer was provided for by law under section 174 of the Family Court Act because in a Uniform Support of Dependents Law proceeding where both parties reside in New York State, the petition might be originated in a county where either of the parties resides. In Schneider, the petitioner resided in Kings County and the respondent resided in Niagara County.
Finally, as shown in Schneider, article VI (§ 19, subd h) of the State Constitution does not prohibit transfers within branches of the Family Court. In construing article VI (§ 19, subd h) it is clear that the intent of this provision of the State Constitution is to prohibit the Family Court from transferring any action or proceeding to any other court of differing subject matter jurisdiction. A correct interpretation of article VI (§ 19, subd h) is that it only prohibits an extra-court transfer of actions or proceedings where the “other court” is the Supreme Court or if the “other court” does not have jurisdiction of the same subject matter and classes of persons sued. This provision of the State Constitution does not prohibit an intra-court transfer such as a trial referral from the Family Court of Queens County to the Family Court of New York County.
E
In “point V” of its motion petitioner, the Brooklyn Home for Children, states that it, the respondents, and the neglected and dependent children of Queens County will all be adversely affected by the new administrative directive requiring the referral of trials in termination of parental rights cases to New York County. Among other things, petitioner contends that operation of the directive will result in increased costs of these proceedings to petitioner *125 insofar as paying expert witnesses to testify in a county other than that in which they practice. Furthermore, petitioner claims that the new directive will require its counsel to spend less time in Queens County Family Court where petitioner has a “substantial number of other cases.” Petitioner also cites the alleged increase of costs and time expended by social workers, teachers and other public servants in having to travel to New York County to give testimony. Finally, petitioner claims that any respondents and foster parents living in Queens County will be significantly inconvenienced by having to travel to New York County to attend these proceedings.
While the court is aware of a minimal inconvenience this new directive will have on some of the parties involved in the within proceeding, any inconvenience to any party, including attorneys, is outweighed by the public policy necessity to expedite the resolution of the status of the child who is the subject of this petition as was intended by the Legislature.
The court rejects petitioner’s fifth point as a basis for granting the instant motion.
F
Finally, petitioner argues that the operation of the new administrative directive discriminates against attorneys from Queens County. According to petitioner’s motion, “It is questionable as to whether attorneys on the Queens (18-B) Panel can serve in the New York County Family Court. Even if the court rules would permit them to so serve, a large percentage of the Queens 18-B attorneys have stated that they will refuse to accept isolated assignments for trial.” The court respectfully finds that petitioner’s attorney has no standing in this proceeding to make arguments for all 18-B attorneys of Queens County. Furthermore, unless petitioner has named his sources who constitute “a large percentage of the Queens 18-B attorneys”, the purported statements which petitioner attributes to them can only be considered as hearsay by the court.
The guidelines set forth by the Clerk of the Queens County Family Court adequately insure that all Queens County attorneys, including those belonging to the 18-B *126 Panel, will not be discriminated against by operation of the new administrative directive.
To date there have not been any trials referred to the new city-wide trial part from Queens County Family Court, therefore, there is no information available as to whether 18-B attorneys from Queens County have refused to accept trial assignments in New York County. However, according to the law assistant on the staff of Part III of the Foster Care Review Term, the 18-B attorneys of Bronx County and Kings County have been accepting trial assignments for contested termination of parental rights cases in New York County Family Court and these attorneys have been coming to New York County for their trials in Part III.
The court has given full consideration to petitioner’s remaining claims of discrimination against Queens County attorneys and finds them to be without merit. Wherefore the court rejects petitioner’s sixth point advance in support of the instant motion.
CONCLUSION
Accordingly, petitioner’s motion is denied.
In accordance with the guidelines of the Clerk of Court, the within proceeding is referred to the Assistant Administrative Judge for transmittal to the Family Court of New York County.