In re Sheila HAMANAKA a/k/a Sheila Davis, Debtor.

Dennis L. DAVIS, Plaintiff,

v.

Sheila HAMANAKA, Defendant.

Bankruptcy No. 84 B 11443 (TLB). Adv. No. 84–5071.

United States Bankruptcy Court, S.D. New York.

Sept. 23, 1985.

6. *See In re Lawler,* 50 B.R. 110 (Bkrtcy.N.D.Tex. 1985).

Richard C. Wolter, Crown Point, Ind., for plaintiff.

Hom & Hsiung by Sandy Hom, New York City, for defendant.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT TO DECLARE DEBT NONDISCHARGEABLE AND TO DISMISS COMPLAINT

TINA L. BROZMAN, Bankruptcy Judge.

Sheila Hamanaka ("debtor") filed a petition under chapter 7 of the Bankruptcy Code on October 10, 1984. Thereafter the plaintiff, the debtor's former husband, commenced an adversary proceeding to determine the dischargeability of his debt for attorneys' fees and expenses. He incurred the fees and expenses in connection with his efforts to regain physical custody of his two minor children from the debtor, who kept them in contravention of various court orders. The parties are before this court on plaintiff's motion for summary judgment seeking a determination that his claim is nondischargeable under section 523(a)(6) of the Bankruptcy Code because the attorneys' fees and expenses were a result of the debtor's willful and malicious act of withholding the children in the face of court orders to the contrary. The debtor has cross moved to dismiss the complaint on the basis that section 523(a)(6) does not apply to custody rights. In the alternative she asserts that summary judgment is inappropriate because of existing factual issues, most particularly whether she acted willfully and maliciously in failing to turn over custody of the children.

For the reasons set forth below, both the defendant's cross motion dismissing the complaint and the motion for summary judgment are denied.

FACTS

The nature of this dispute necessarily entails high emotions on the part of the litigants. Although the court is sympathetic to the hardship and distress of both the plaintiff and the debtor, justice requires an objective analysis of the facts and application of the law.

On September 2, 1981, following contested litigation, custody of the debtor's two minor children, ages seven and eight, was awarded to Dennis Davis, their father, by the Lake County Superior Court, Gary, Indiana. During the summer of 1982 and in accordance with the custody order, the two children visited Sheila Hamanaka, their mother and the debtor, in Washington, D.C. While the children were still visiting with her, the debtor filed a complaint for custody in the Superior Court of the District of Columbia (Family Division). On August 2, 1982, two days after the children were due back with their father, she obtained an *ex parte* temporary restraining order prohibiting Mr. Davis from removing the children from the District of Columbia. Thereafter, the Superior Court of the District of Columbia issued a Writ of Habeas Corpus directing Ms. Hamanaka to bring the children before that court on August 20, 1982 for a determination of the children's custody. Although Ms. Hamanaka herself appeared, she failed to comply with that order and accordingly was further ordered to return the children to their father at 10:00 p.m. that evening in his hotel. She did not do so. On August 24, 1982, an Attachment for Contempt was issued against her. Once again, an order was issued requiring Ms. Hamanaka to return the children. On October 7, 1982, a memorandum opinion and order was issued by the Superior Court

in which Judge Schweib held Ms. Hamanaka in contempt of court, directed her to return the children to the custody of their father, and ordered her imprisoned by the U.S. Marshall until she purged herself of contempt. Judge Schweib also awarded costs, expenses and counsel fees to Mr. Davis.

Ms. Hamanaka asserts that during the pendency of those proceedings she took the children to a therapist in Washington, D.C. where the children informed her of various types of illicit behavior occurring in their father's home. The occurrence of these acts, Ms. Hamanaka asserts, was corroborated by a friend in Indiana. Ms. Hamanaka contends that apprised of this information she was afraid for her children and, in compliance with their wishes, did not return them to their father. She thereafter moved with the children to New York and resided with her sister where she openly enrolled the children in the local public school, music school and dance class. During this time she had minimal but unsuccessful negotiations with her husband concerning the custody. About three months into the school year, Mr. Davis regained physical custody of the two children and took them back to Gary, Indiana. Subsequently, he successfully sought an order from the Superior Court of the District of Columbia for supplemental fees and costs associated with his efforts to regain custody. That court also terminated the outstanding warrant of arrest against Ms. Hamanaka since the children were in the father's custody.

It is the fees and expenses associated with Mr. Davis' efforts to regain custody of his children that he now seeks be declared nondischargeable because he asserts they were the result of willful and malicious acts of the debtor.

DISCUSSION

Plaintiff relies on section 523(a)(6) in establishing that his claim is nondischargeable. That section reads in part:

§ 523   Exceptions to Discharge

(a) A discharge under Section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Plaintiff contends that there was willful and malicious injury to his property, his custody rights to his two minor children, and that there was a willful and malicious injury to him.

■   Plaintiff's first argument poses to the court a novel issue in bankruptcy, that is, whether the violation of custody rights can be construed as injury "to the property of another entity" as contemplated under § 523(a)(6). This court has determined that custody rights do not constitute property within the meaning of section 523(a)(6).

The Supreme Court has taught that in defining "property," the context in which the word arises and the purposes of the bankruptcy statutes must be considered, *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), for "[i]t is impossible to give any categorical definition to the word 'property' ..." *Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 514, 15 L.Ed.2d 428 (1966). The Court has defined "property" as follows: in the context of a former statute excepting from discharge liabilities for obtaining property by false pretenses or false misrepresentations

> something subject to ownership, transfer or exclusive possession and enjoyment, which may be brought within the dominion and control of a court through some recognized process. This is certainly the full extent of the word's meaning as employed in ordinary speech and business....

*Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915). In equating custody rights with property rights, plaintiff is suggesting that his children are his property, a rather primitive concept which ignores the special *relationship* between a parent and child. Authorities uniformly recognize that the parent-child relationship is a "sta-

tus" and not a "property right." 67A C.J.S. *Parent & Child,* § 2 (1978); 59 Am.Jur.2d, *Parent and Child,* § 1, (1971).

The case law in each of Indiana, New York and the District of Columbia is in accord with the concept that custody rights are not property rights. "[A] parent's right of custody is not akin to a property right, but is more in nature of a trust...." *Collins v. Gilbreath,* 403 N.E.2d 921, 923 (Ind.App. 4th Dist.1980). *See also Matter of Adoption of Thomas,* 431 N.E.2d 506, 512 (Ind.App. 4th Dist.1982) (adopting the trust concept). Recognizing that the interest of a child exists independently from those of its parents, at least one New York court has affirmatively stated that "there can be no parental property right in a child." *In re L.,* 77 Misc.2d 363, 366, 353 N.Y.S.2d 317, 324 (N.Y. County Family Court 1974), *modified on other grounds,* 45 A.D.2d 375, 357 N.Y.S.2d 987. *See generally,* 47 N.Y.Jur. *Property* § 9 (1966). Although the District of Columbia courts have yet to grapple with the precise issue of whether custody rights are akin to property rights, the cases indicate that custody rights are not a function of adversary rights of the parents but are predicated on the general welfare of the child. *Winter v. Crowley,* 374 F.2d 317 (D.C.Cir.1967); *Bartlett v. Bartlett,* 221 F.2d 508 (D.C.Cir. 1954). These jurisdictions are not alone; the states which have confronted this issue have determined unequivocally that custody rights of a child are not property rights. *See e.g., Anguis v. Superior Court In and For County of Maricopa,* 6 Ariz.App. 68, 429 P.2d 702, 705 (1967); *Goessler v. Bernstein,* 149 Pa.Super. 29, 26 A.2d 213 (1942).

While the argument that custody rights are akin to property rights may not be unique, the context in which it arises in this case, dischargeability of a debt in bankruptcy, is one of first impression. This court finds no reason to deviate from the seemingly uniform authorities which hold that custody rights are not property rights, particularly since exceptions to dischargeability of a debt are to be strictly construed against a creditor's objections and liberally in favor of the debtor. *In re Fiedler,* 28 B.R. 28 (Bankr.M.D.Pa.1982); *Truax & Hovey, Ltd. v. Grosso (In re Grosso)* 9 B.R. 815, 812 (Bankr.N.D.N.Y.1981); *In re Danns,* 558 F.2d 114 (2d Cir.1977).

While plaintiff cannot rightfully claim an injury to his property right, he does allege that the debtor's violation of his custody right is an actionable tort, that is, an injury to himself as an entity as entity is defined in § 101(14) of the Code. His argument hinges on the decision in *Kajtazi v. Kajtazi,* 488 F.Supp. 15 (E.D.N.Y.1978), in which it was held that the unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort entitling the custodial parent to maintain an action for damages against the abductor or withholder. Plaintiff claims that attorneys' fees expended in regaining physical custody of his children constitutes injury, and neither the case law nor the statute precludes injury of a purely monetary nature. In fact, the proper focus in determining whether an exception to discharge is warranted is the nature of the act and not the nature of the liability. *In re Adams,* 761 F.2d 1422, 12 C.B.C.2d 1220, 1227 (9th Cir.1985). Thus plaintiff has overcome his first hurdle.

However, in order to fall within the purview of the exception to dischargeability plaintiff must prove willfulness and maliciousness, which are by their nature factual determinations. *See Rivera v. Moore-McCormack Lines, Inc.,* 238 F.Supp. 233 (S.D.N.Y.1965). Consequently, summary judgment is inappropriate. At trial, plaintiff must make a showing that the debtor's acts were both willful and malicious and further that the specific attorneys' fees he seeks were the result of those willful and malicious acts.

For the reasons stated above, the motion for summary judgment and the cross motion to dismiss the complaint are denied.

Settle Order.