**In re Milton WEINSTEIN, Debtor.**

**James F. FREER, as Guardian Ad Litem of Christina Kathleen Pafero, a Minor; Alan Marshall Jacobs, as Guardian Ad Litem of Nicole Jacobs, a Minor; Daniel Jacobs; Eric Stuart Linder; and Wachovia Bank of North Carolina, N.A., Successor Trustee for the Trusts Created Under Item Three of the Wills of Herbert Jacobs and Bella Lewan Jacobs, Plaintiffs,**

v.

**Milton WEINSTEIN, Defendant.**

**Bankruptcy No. 892–83328–20.
Adv. No. 892–8457.**

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 12, 1994.

260

I. Faison Hicks, Parker, Poe, Adams & Bernstein, Charlotte, NC, Perry M. Amsellem, James A. Janowitz, Pryor, Cashman, Sherman & Flynn, New York City, for plaintiffs.

Edward P. Frey, Joseph E. Macy, Speno Goldman Goldberg Steingart & Penn, P.C., Mineola, NY, for defendant/debtor.

Richard O'Connell, Chapter 7 Trustee, Yost & O'Connell, Whitestone, NY.

Scott Y. Stuart, Stan Y. Yang, Office of U.S. Trustee, Garden City, NY.

## DECISION AND ORDER

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

Plaintiffs filed the within Adversary Proceeding seeking a determination that certain of Debtor's obligations are non-dischargeable for having been incurred through fraud or defalcation while Debtor was acting in a fiduciary capacity. Before the Court is Plaintiffs' motion for summary judgment ("Motion"); Debtor opposed the Motion and cross-moved for summary judgment in his favor.[1] The issues at bar are the collateral estoppel effect of prior litigation between the parties and the dischargeability of the debts deriving from the litigation, including Debtor's obligation to pay the judgment creditors' costs, expenses and attorneys' fees.

### FINDINGS OF FACT AND RELEVANT BACKGROUND

The following background includes the Court's findings of uncontested facts, which derive in part from oral argument and papers filed with the Court, and in part from the holdings of prior courts.[2]

During the late 1970s, the parents of one of the Plaintiffs, Christina Kathleen Pafero, were convicted of certain serious felonies. Ms. Pafero thereafter began living in the home of her maternal grandparents, Herbert Jacobs and Bella Lewan Jacobs. Christina's mother was sentenced to two life terms in

---

1. The Court has jurisdiction over this case pursuant to sections 1334, 157(a) and 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). The Motion is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (1994).

2. We analyze later the extent to which Debtor may disagree with our assimilation of prior courts' legal or factual conclusions in our discussion of the collateral estoppel effect of these prior decisions. *See infra* Legal Discussion, part II.

prison; her father was sentenced to death, and was executed by the State of Florida. In 1982, when Christina was eight, her grandparents were simultaneously killed in an airplane crash in New Orleans.

The wills of Herbert and Bella Lewan Jacobs each created a trust for the benefit of their children and grandchildren (the "Herbert Jacobs Trust" and the "Bella Lewan Jacobs Trust"; cumulatively, the "Trusts"). Debtor, who was an attorney at law but was in practice as a certified public accountant, was named trustee of the Trusts.

In 1986, one of the within Plaintiffs, James Freer, filed three petitions for relief in a North Carolina state court as Guardian-ad-litem of Christina ("North Carolina Action").[3] Through the North Carolina Action, Mr. Freer cumulatively sought to recover over $66,000 in commissions taken by Debtor as trustee, money damages, attorneys' fees and removal of Debtor as trustee of the Trusts. The grounds for removal of Debtor included allegations that he breached his fiduciary duties as trustee by taking excessive commissions and failing to provide trust beneficiary Christina Kathleen Pafero with certain discretionary payments.

The North Carolina Action culminated in a six day jury trial. The jury determined that Debtor, as trustee of the Trusts: abused his discretion and breached his fiduciary duties; made materially inadequate distributions; acted in his own interest and under an improper motive; paid himself commissions in excess of that allowed by law; breached his duty of loyalty; wasted assets of the Trusts by incurring tax penalties; and breached his fiduciary duty and duty of loyalty by paying his personal attorneys' fees with the Trusts' assets. *Freer v. Weinstein*, Index Nos. 86–SP–417, 86–SP–418 (Super.Ct., Mecklenburg Cty., N.C.), Judgment dated July 24, 1987 at 2–3 (Gray, J.). In furtherance of these jury findings, the North Carolina Superior Court ruled, upon "overwhelming" evidence, that Debtor: be removed as trustee of the Trusts; repay the $66,803.19 in commissions he received from the Trusts ($40,983.16 from the Herbert Jacobs Trust, $25,820.03 from the Bella Jacobs Trust); repay to each of the Trusts the $12,500 Debtor improperly removed for payment of his personal attorneys' fees incurred in the North Carolina Action; pay all tax penalties assessed to the Trusts; and pay all Plaintiffs' costs, expenses and reasonable attorneys' fees. *Id.* at 7–10. The North Carolina court additionally found that Debtor defended against Mr. Freer's petitions, "in bad faith and for his personal motives." *Id.* at 7. All liability was assessed against Debtor personally. *Id.* (citing N.C.Gen.Stat. §§ 6–31, 6–21). Debtor never satisfied any part of the North Carolina judgment.

Debtor then appealed to the North Carolina Court of Appeals for relief from the judgment. The judgment was affirmed in a reported decision rendered in 1988. *Freer v. Weinstein (In re Wills of Jacobs)*, 91 N.C.App. 138, 370 S.E.2d 860 (N.C.Ct.App. 1988). In late 1988, the North Carolina Supreme Court denied Debtor's petition for discretionary review. *Id.*, 323 N.C. 476, 373 S.E.2d 863 (1988).

The state trial court subsequently conducted hearings regarding Debtor's payment of his adversaries' costs, expenses and attorneys' fees, and on Mr. Freer's motion to find Debtor in contempt of certain orders. In June of 1989, the North Carolina Superior Court ordered Debtor to pay $268,334.64 to plaintiffs, representing their reasonable costs, attorneys' fees and expenses. *Freer v. Weinstein*, Index Nos. 86–SP–417, 86–SP–418 (Sup. Ct. Mecklenburg Cty., N.C.), Order dated June 7, 1989, at 3–4 (Gray, J.). Debtor, along with certain of his adversaries, appealed from this order. *Freer v. Weinstein*, Index Nos. 86–CVS–3913, 86–SP–417, 86–SP–418 (Sup. Ct. Mecklenburg Cty., N.C.), Order dated December 31, 1990, at 2 (Gray, J.). In July of 1989, the state court rendered an order finding Debtor in contempt. *Id.* Debtor appealed from this contempt order. *Id.* While the two orders were on appeal, Debtor petitioned to and was denied Discretionary Review by the North Carolina Su-

---

**3.** The suit was captioned *Freer v. Weinstein*, Index Nos. 86–SP–417, 86–SP–418 (Super.Ct., Mecklenburg Cty., N.C.).

preme Court. *Id.* The North Carolina Court of Appeals then affirmed both of the orders that were on appeal. *Id.* Debtor petitioned for Discretionary Review of these decisions, and was again denied. *Id.* Additional costs were subsequently assessed against Debtor for his continued litigation and awarded to the plaintiffs in the amounts of $13,271.36, $26,351.12 and $7,100.82. *Freer v. Weinstein,* Index Nos. 86–CVS–3913, 86–SP–417, 86–SP–418 (Sup. Ct. Mecklenburg Cty., N.C.), Orders dated December 31, 1990, January 5, 1991 and January 18, 1991 (Gray, J.).

The aggregate sum imposed against Debtor pursuant to all litigation in North Carolina was $406,861.13. This total was comprised of $91,803.19 to be returned to the Trusts for reimbursement of funds improperly withdrawn, and $315,057.94 to be "taxed as costs" to Debtor to reimburse plaintiffs for their reasonable costs, expenses and attorneys' fees.[4]

To obtain collection, the plaintiffs then pursued Debtor to New York. In 1992, plaintiffs domesticated all North Carolina Action judgments against Debtor in the Supreme Court of New York, in both New York and Nassau Counties. *See Freer v. Weinstein,* Index Nos. 01137/89 (N.Y. Sup. Ct., N.Y. Cty.); *id.,* Index Nos. 9970/92, 9971/92, 9972/92, 9973/92 (N.Y. Sup. Ct., Nass. Cty.). Pursuant to a related action in New York, the New York Supreme Court issued a restraining order against Debtor prohibiting him from transferring any property in which he had an interest ("Restraining Notice").[5] More litigation ensued. The New York Supreme Court then found that Debtor "refused, failed and willfully neglected to obey the Restraining Notice, and that the conduct

of [Debtor] was calculated to and actually did impede and prejudice the rights and remedies of the [plaintiffs]." *Freer v. Weinstein,* Index No. 5750/89 (N.Y. Sup. Ct., Nass. Cty.), Final Order of Contempt, dated March 23, 1992, at 3 (Roncallo, J.). This decision was itself a Final Order of Contempt against Debtor ("Contempt Order"). Once again, Debtor was ordered to pay all his adversaries' costs and attorneys' fees. *Id.* For his failure to comply with the Contempt Order, Debtor was later arrested and incarcerated.

On May 12, 1992, the New York Supreme Court awarded the plaintiffs another order: (i) voiding Debtor's prior transfer of real property[6] to his wife, Ann Weinstein; (ii) restraining Debtor, both pending the proceeding and permanently, from conveying or otherwise disposing of any real property; (iii) granting the plaintiffs reasonable attorneys' fees pursuant to section 276–a of the New York Debtor and Creditor Law, and additional costs and allowances pursuant to rules 8303(a)2 and (a)6(b) of the New York Civil Practice Law and Rules. *Wachovia Nat'l Bank & Trust Co., N.A. v. Weinstein,* Index No. 6975/92 (N.Y. Sup. Ct., Nass. Cty.), memorandum dated May 12, 1992, at 1 (Roncallo, J.). The amount of attorneys' fees awarded by the New York Supreme Court was never reduced to a sum certain. The attorneys representing Plaintiffs in the within Adversary Proceeding have filed affidavits in which they attest that the fees amount to $134,823.16.[7]

On June 12, 1992, shortly after Debtor's incarceration for violation of the Contempt Order, Debtor filed a voluntary petition for bankruptcy relief under chapter 7 of title 11, United States Code ("Bankruptcy Code" or "Code"). Debtor's appeals from certain (or

---

4. All awards for Debtor's adversaries' reasonable costs, expenses and attorneys' fees were first to be paid by the Trusts, then taxed as costs to Debtor personally. Thus, many of the law firms have been paid for some time, while the Trusts remain unreimbursed from Debtor to date.

5. The Restraining Notice forbade Debtor from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which [Debtor] has an interest, except upon direction of the Sheriff or pursuant to an Order of the Court, until the Judgment in the amount of $91,803.19, together with interest thereon from

July 24, 1987 is satisfied and vacated...." *Wachovia Nat'l Bank & Trust Co., N.A. v. Weinstein,* Index No. 6975/92 (N.Y.Sup.Ct., Nass. Cty.), memorandum dated May 12, 1992, at 1 (Roncallo, J.).

6. This was the residence of Debtor and his wife, located at 878 Longacre Avenue, North Woodmere, New York.

7. I. Faison Hicks Aff. ¶¶ 2–3; Perry M. Amsellem Aff. ¶¶ 2–3.

all) of the New York court decisions were stayed by his bankruptcy filing. 11 U.S.C. § 362(a) (1994). As stated, on October 9, 1992, Plaintiffs commenced the within Adversary Proceeding seeking a determination that all debts arising from the North Carolina and New York state court actions are non-dischargeable.

## LEGAL DISCUSSION

### I. Plaintiffs' Claims and Issues Presented

■ Plaintiffs seek a judgment that determines Debtor's obligations non-dischargeable, arguing that his debts derive from defalcations committed while he was acting in a fiduciary capacity. Plaintiffs' statutory basis is Code section 523(a)(4) which provides, in pertinent part:

A discharge ... does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny....

11 U.S.C. § 523(a)(4) (1994). Section 523(a)(4) provides a meaningful function: It protects beneficiaries from their trustee's defalcation by rendering the beneficiaries immune from the trustee's discharge in bankruptcy. *Id.; e.g., Jasel Bldg. Prods. Corp. v. Polidoro (In re Polidoro),* 12 B.R. 867, 870 (Bankr.E.D.N.Y.1981).

Plaintiffs furthermore urge that the doctrine of collateral estoppel prevents Debtor from arguing before the Court on factual issues as to whether he committed defalcation while acting in a fiduciary capacity. Plaintiffs argue that the facts attendant to this issue were previously litigated in and decided by the North Carolina state courts.

Accordingly, the issues before the Court are: whether Debtor is collaterally estopped from arguing upon any of the factual and legal conclusions of the prior state courts; whether the debts deriving from substantive awards against Debtor are non-dischargeable under the Bankruptcy Code as deriving from defalcation while acting in a fiduciary capacity; and whether the debt for attorneys' fees, expenses and costs must also be determined non-dischargeable. We first address the col-

lateral estoppel effect of the North Carolina state court rulings.

### II. Collateral Estoppel Effect of Prior Courts' Rulings

■ The doctrine of collateral estoppel is easily stated:

[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

*Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); RESTATEMENT 2D JUDG. § 68; Scott, *Collateral Estoppel by Judgment,* 56 HARV.L.REV., 1, 2–3 (1942)).

■ Collateral estoppel principles apply to dischargeability proceedings under section 523(a) of the Bankruptcy Code. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *see also Arndt v. Hanna (In re Hanna),* 163 B.R. 918, 925 (Bankr.E.D.N.Y.1994); *Davidcraft Corp. v. Baer (In re Baer),* 161 B.R. 334, 337 (Bankr.E.D.N.Y.1993) ("[T]he Bankruptcy Court may hold on the basis of the state court proceedings that the debt is non-dischargeable.").

The following four-part test has been established to determine whether collateral estoppel effect may be accorded a prior court's findings:

(1) The issue sought to be precluded must be the same as that involved in the prior action;

(2) The issue must have been actually litigated;

(3) It must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the prior judgment.

*E.g., Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Hanna,* 163 B.R. at 925 (citing, *e.g., Moreno v. Schwartz (In re Schwartz),* 36 B.R. 355, 357 (Bankr.E.D.N.Y.1984); *First Nat'l Bank*

*v. Overmeyer (In re Overmeyer)*, 52 B.R. 111, 115 (Bankr.S.D.N.Y.1985) (quoting *In re Ross*, 602 F.2d 604, 608 (3d Cir.1979))).

## A. Identical Issues

■ For collateral estoppel to apply in the case at bar, we must first find that the issues at bar are identical to the issues before the prior courts.

■ Plainly, the issue before this Court is whether Debtor committed a defalcation under section 523(a)(4) of the Bankruptcy Code. Plaintiffs must establish that: (i) Debtor was acting in a fiduciary capacity; and (ii) Debtor committed a defalcation while acting in that capacity. 11 U.S.C. § 523(a)(4) (1994); *Crawford v. Burke*, 195 U.S. 176, 188–89, 25 S.Ct. 9, 11–12, 49 L.Ed. 147 (1904) (defalcation must occur while acting in fiduciary capacity to except debt from discharge); *e.g., Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987) (citing *In re Interstate Agency, Inc.*, 760 F.2d 121, 124 (6th Cir.1985); *In re Johnson*, 691 F.2d 249, 251–52 (6th Cir.1982); 3 COLLIER ON BANKRUPTCY ¶ 523.14 at 523–93 to 523–97 (Lawrence P. King et al. eds., 15th ed. 1987)).

On the interpretation of "defalcation," the Second Circuit Court of Appeals has written:

> Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.... Whatever was the original meaning of "defalcation," it must have covered other defaults than deliberate malversions, else it added nothing to the words, "fraud or embezzlement."

*Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511 (2d Cir.1937) (citations omitted); *e.g., Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993) (defalcation for purposes of exception to discharge is failure to produce funds entrusted to fiduciary) (citing *Herbst*; other citations omitted); *Tom Lange Co. v. Stout*, 123 B.R. 412, 414 (Bankr. W.D.Okla.1990) (A defalcation is "the failure of one who has received monies in trust to pay it over as he ought."); *Landvest Assocs. v. Owens (In re Owens)*, 54 B.R. 162, 165 (Bankr.D.S.C.1984) ("'Defalcation' is the

slightest misconduct, and it need not be intentional misconduct; negligence or ignorance may be 'defalcation.'"). To prevail, Plaintiffs at bar must demonstrate that Debtor engaged in this type of behavior.

Whether Debtor was acting in a fiduciary capacity was certainly before the North Carolina state courts. The plaintiffs therein sued Debtor for removal as a trustee, and for reimbursement of certain debts, expressly alleging that he breached his fiduciary duty as trustee of the Herbert Jacobs and Bella Lewan Jacobs Trusts. It is obvious that the issue before the prior courts was whether Debtor was acting in a fiduciary capacity. We hold, therefore, that Debtor is collaterally estopped from litigating that he was not acting in a fiduciary capacity.

■ As to whether "defalcation" was before the state courts, the jury findings prove dispositive on this issue. The jury in the North Carolina Action found that Debtor breached his fiduciary duty and duty of loyalty as trustee of the Trusts in that he: made materially inadequate distributions to beneficiaries, paid himself excessive commissions, improperly incurred tax penalties, and improperly paid his personal attorneys' fees from and wasted the Trusts' assets. *Freer v. Weinstein*, Index Nos. 86–SP–417, 86–SP–418 (Super. Ct., Mecklenburg Cty., N.C.), Judgment dated July 24, 1987 at 2–3 (Gray, J.). These jury findings establish that Debtor's actions went far beyond mere failure to account for funds held in trust. *E.g., Western Sur. Co. v. Dauterman (In re Dauterman)*, 156 B.R. 976, 980 (Bankr.N.D.Ohio 1993); *Seiler v. Farley (In re Farley)*, 156 B.R. 486, 493–94 (Bankr.W.D.Pa.1993); *Kleppinger v. Kleppinger (In re Kleppinger)*, 27 B.R. 530, 532 (Bankr.M.D.Pa.1982); *Travelers Express Co. v. Niven (In re Niven)*, 32 B.R. 354, 355 (Bankr.W.D.Okla.1983) (defalcation is "the failure of one who has received monies in trust to pay it over as he ought"). Thus, the Court holds that whether Debtor committed a defalcation was also an issue before the North Carolina state courts. *See also Freer v. Weinstein (In re Wills of Jacobs)*, 91 N.C.App. 138, 370 S.E.2d 860 (N.C.Ct.App.1988) (discussion by appellate

court whether Debtor's actions constituted breach of fiduciary duty).

The Court holds, therefore, that the issues at bar pursuant to Plaintiffs' claim under section 523(a)(4) and the issues before the North Carolina courts are identical, satisfying prong one.

### B. Fully Litigated

■ The second part of the collateral estoppel test requires that the issues were fully litigated before the prior court(s). *E.g., Blonder–Tongue Labs., Inc. v. University Ill. Found.*, 402 U.S. 313, 329–30, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) (citing cases). Debtor defended against numerous allegations that he breached his fiduciary duties for well over four years. Fraud, irresponsibility, neglect and Debtor's behavior as trustee of the Trusts were issues all fully litigated before state courts at the trial level. Debtor then exhausted many (if not all) of his appeals. Debtor has not genuinely argued that these issues were not fully litigated. Further discussion is unnecessary. The Court holds that the essential issues were fully litigated and that prong two is satisfied.

### C. Finality

■ Collateral estoppel's third requirement is that the prior ruling is final. *E.g., Bender v. Tobman (In re Tobman)*, 107 B.R. 20, 23–24 (S.D.N.Y.1989); *see, e.g., Langanella v. Braen (In re Braen)*, 900 F.2d 621, 628 (3d Cir.1990); *Miller v. Held (In re Held)*, 734 F.2d 628, 629 (11th Cir.1984); *see generally* 1B MOORE'S FEDERAL PRACTICE ¶ 0.409 (James Wm. Moore ed., 2d ed. 1993) (discussing necessity of final judgment for collateral estoppel). The parties have not questioned the finality of the North Carolina rulings. Debtor was represented by counsel before, during and after the six day jury trial. Furthermore, as stated, all of Debtor's avenues of appeal have been exhausted.[8] The holdings and the chronology of events demonstrate conclusively that the issues regarding the propriety of Debtor's actions as trustee of the Trusts were necessarily determined by final disposition. We hold that these rulings are clearly valid and final. *See, e.g., Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1191 (5th Cir.1982) (" '[F]inality' in the offensive collateral estoppel context is 'fully litigated.' ").

### D. Essentialness of Prior Courts' Determinations

■ Finally, we conclude that the North Carolina courts' determinations were essential to the rulings and judgments rendered. Plaintiffs therein sought damages from Debtor and his removal as trustee of the Trusts. Finding that Debtor breached his duty of loyalty and his fiduciary duty to the Trusts' beneficiaries, the courts ordered Debtor to repay to the Trusts all commissions received. This order was issued pursuant to North Carolina General Statute Section 32–50(j), which states that "no fiduciary or trustee who has been guilty of default or misconduct in the due execution of his office resulting in the revocation of his appointment shall be entitled to any compensation under the provisions of this article." N.C.GEN.STAT. § 32–50(j) (1977). To hold as a final determination that Debtor must disgorge all commissions received, and to remove Debtor as trustee for cause, it was clearly essential for the North Carolina courts to decide that Debtor breached his fiduciary duty and engaged in improper behavior.

■ Therefore, as all parts of the test for collateral estoppel have been satisfied, it is proper to bar Debtor from rearguing whether he committed a defalcation while acting in a fiduciary capacity. Debtor is accordingly estopped from arguing Plaintiffs'

---

8. Debtor actually appealed from aspects of the North Carolina state court decisions no less than five times. The North Carolina Court of Appeals affirmed, in relevant part, the decision, *Freer v. Weinstein (In re Wills of Jacobs)*, 91 N.C.App. 138, 370 S.E.2d 860 (N.C.App.1988) (No. 8826SC72), and four times the North Carolina Supreme Court denied Debtor's petitions for discretionary review. *Id.*, 360 S.E.2d 108 (N.C. 1987) (No. 469P87); *id.*, 323 N.C. 476, 373 S.E.2d 863 (N.C.1988) (No. 428P88); *id.*, 388 S.E.2d 458 (N.C.1989) (No. 478P89); *id.*, 327 N.C. 429, 395 S.E.2d 683 (N.C.1990) (No. 315P90).

satisfaction of the elements of Bankruptcy Code section 523(a)(4). Debtor's obligation is one for "defalcation while acting in a fiduciary capacity;" consequently, the debt is non-dischargeable. 11 U.S.C. § 523(a)(4) (1994). We hold that the amount of Debtor's non-dischargeable obligation for defalcation is the amount that the North Carolina courts determined Debtor improperly removed from the Trusts. This figure represents the sum of commissions Debtor received from the Trusts which, under the North Carolina state court orders, Debtor was required to disgorge, and the amount Debtor improperly removed to pay his personal attorneys' fees. *See also* Debtor's Memorandum of Law 2 (dividing amount Plaintiffs argue is non-dischargeable and classifying portions in similar manner). The North Carolina courts determined that $66,803.19 in commissions were to be disgorged, plus interest, and $25,000, improperly removed by Debtor for payment of personal attorneys' fees, were to be replaced, plus interest.

This leaves one issue for determination. As stated, the prior courts held Debtor liable for an additional $315,057.94, representing the reasonable costs, expenses and attorneys' fees of the plaintiffs litigating against Debtor. *See also id.* (Debtor's acknowledgment of this figure and its denomination as his state court adversaries' costs, expenses and attorneys' fees). We now turn to the dischargeability of this segment of Debtor's debt.

### III. Dischargeability of Court–Ordered Attorneys' Fees

Though Debtor argued (perfunctorily) that his entire obligation should be discharged, Debtor's alternative contention is that at least his ancillary liability for his adversaries' attorneys' fees, costs and expenses[9] should be determined dischargeable. Plaintiffs dispute this contention, arguing that Debtor's obligation to satisfy their attorneys' fees must be determined non-dischargeable as well. Our analysis follows.

Not infrequently, judgment debtors must file for bankruptcy relief subsequent to defeat in non-bankruptcy related litigation. In addition to the judgment rendered, the court may have determined that the judgment debtor should be liable for satisfaction of the attorneys' fees, costs and expenses of the adversary. In bankruptcy the debtor may seek discharge of the total liability. This is the circumstance in the present case.

Certain theories have been established by courts which hold that a debtor may not discharge an obligation for court-awarded attorneys' fees, costs and expenses. Because there has been no definitive ruling upon the issue by a controlling court within our Second Circuit, the Court will evaluate the applicability of the three prevailing doctrines (which we label for convenience). These are: (A) The "statutory/contractual basis" doctrine, under which a bankruptcy judge is precluded from determining that a debt for fees and costs is non-dischargeable, unless the prior court had some statutory or contractual basis for rendering the order; (B) the "status dependant" doctrine, whereby the dischargeability status of the ancillary debt for fees and costs depends upon the dischargeability of the principal or underlying debt (this doctrine includes "but for" and "realm of debt" tests, discussed below); and (C) the "support context" doctrine, whereby an ancillary debt for attorneys' fees, costs and expenses is non-dischargeable if (i) under the "status dependant" doctrine, such debt is related to an underlying debt for non-dischargeable alimony, maintenance or support, or (ii) under an "equivalent debt" doctrine, satisfaction of the debt for fees, expenses and costs is itself to function as a component of non-dischargeable support, alimony or maintenance.

### A. Statutory/Contractual Basis Doctrine

Certain courts hold that a debt for court-ordered attorneys' fees may be determined non-dischargeable only where there originally existed some statutory or contractual basis for the order. *E.g., Transouth*

---

9. Hereinafter, the Court may refer to "attorneys' fees, costs and expenses," or to certain of the terms individually. Nevertheless, the meaning intended is not altered and the Court's reference is at all times to the entire ancillary debt.

*Fin. Corp. of Fla. v. Johnson,* 931 F.2d 1505, 1509 (11th Cir.1991); *Jordan v. Southeast Nat'l Bank (In re Jordan),* 927 F.2d 221, 226–28 (5th Cir.1991) (a debt excepted from discharge "includes state-approved contractually required attorney's fees") (quoting *Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1168 (6th Cir.1985)); *Lupin v. Ziegler (In re Ziegler),* 109 B.R. 172, 177 (Bankr.W.D.N.C.1989); *Devoe v. Cheatham (In re Cheatham),* 44 B.R. 4, 8 (Bankr.N.D.Ala.1984). Thus, as stated in *Devoe,* "unless there is statutory or contractual authority for such an award, the debt created thereon is dischargeable." *Devoe,* 44 B.R. at 8. Even a common law basis for the order may be sufficient. *See, e.g., Beard v. Beard (In re Beard),* 5 B.C.D. 680, 68 (Bankr.M.D.Tenn.1979) (attorneys' fees dischargeable because award not authorized under statute or common law). *See also Littlefield v. McGuffey (In re McGuffey),* 145 B.R. 582, 596 (Bankr.N.D.Ill.1992) ("A few cases" determine attorneys' fees non-dischargeable if "there is some statutory or contractual authority for exempting the fee award from discharge."). The court which determines the dischargeability of the debt must perform analysis and find that some statutory, contractual or even common law basis for rendering the order existed. Absent a basis, the debt must be determined dischargeable.[10]

## B. Status Dependant Doctrine

█ A second line of decisions concludes that "the dischargeability of ancillary obligations such as attorney's fees turn[s] on the

dischargeability of the underlying debt...." *DuPhily v. DuPhily,* 52 B.R. 971, 978 (D.Del. 1985) (citing *In re Chambers,* 36 B.R. 42 (Bankr.D.Wis.1984); *In re Sposa,* 31 B.R. 307 (Bankr.E.D.Va.1983)). *E.g., Klingman v. Levinson,* 831 F.2d 1292, 1296 (7th Cir. 1987) (citing *Jennen v. Hunter (In re Hunter),* 771 F.2d 1126, 1131 (8th Cir.1985); *In re Foster,* 38 B.R. 639, 642 (Bankr.M.D.Tenn. 1984)); *Texas Venture Partners v. Christian (In re Christian),* 111 B.R. 118, 122 (Bankr. W.D.Tex.1989) (" 'The new Code leaves undisturbed the principle that attorney fee dischargeability or nondischargeability must rise or fall with the primary debt.' ") (quoting *Bell v. Bell (In re Bell),* 5 B.R. 653, 655 (Bankr.W.D.Okla.1980)). Under this line of decisions' "status dependant" logic, a contractual or statutory basis for the award of attorneys' fees is not relevant. The dischargeability status of the ancillary debt depends upon the dischargeability of the underlying debt. *E.g., Florida v. Ticor Title Ins. Co. (In re Florida),* 164 B.R. 636, 639 (9th Cir. BAP 1994) (" 'Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, *their status depends* on that of the primary debt.' ") (emphasis added) (citing *Klingman; Hunter*).

The courts espouse two coinciding justifications for regarding the dischargeability status of an ancillary debt as dependant upon the dischargeability status of the underlying debt.

### 1. "Realm of Debt" Principle

█ One line of reasoning deems all debts stemming from a non-dischargeable

---

10. Whether Debtor's obligation for attorneys' fees, costs and expenses was awarded to Plaintiffs by the state courts pursuant to statutory or contractual provisions was not revealed by Plaintiffs. Our review of the North Carolina and New York courts' orders and decisions indicates that all awards of attorneys' fees and costs were statutorily authorized.

Nevertheless, the Court does not subscribe to the theory that fees and expenses may be determined non-dischargeable solely where such award was granted pursuant to a statutory or contractual provision binding upon the parties. In an action to determine the dischargeability of debts, the contractual or statutory basis for either the underlying debt or the ancillary one for attorneys' fees is not before the bankruptcy judge. The only issue is whether the obligations are debts which must be excepted from discharge

under section 523(a) of the Bankruptcy Code. 11 U.S.C. § 523(a) (1994). Where a state court perceived it proper for one party to pay the attorneys' fees, costs and expenses of another, the bankruptcy judge must assume that such order was within its authority. Absent fraud, the prior court's authority is not an issue which can be raised before the bankruptcy judge. *See infra* Section IV (discussing bankruptcy judge's inability to alter final judgment absent fraud). The correctness and legal basis for the order or judgment granting fees, if challenged, should be determined by courts that have appellate jurisdiction. Bankruptcy court, where the dischargeability of the debts is at issue, should not serve as an appellate forum for a debtor wishing to question whether a statutory or contractual basis for such order existed.

debt as themselves being caused by the debtor's action. Under this logic, the judge considers the attorneys' fees granted by the prior court as "an actual damage incurred by the plaintiff from the defendant's [debtor's] actions." *Doucette v. Kwiat (In re Kwiat),* 62 B.R. 818, 823 (Bankr.D.Mass.1986), *aff'd in part, rev'd in part,* 81 B.R. 184 (D.Mass. 1987); *see, e.g., Cablevision Sys. Corp. v. Cohen (In re Cohen),* 121 B.R. 267, 272 (Bankr.E.D.N.Y.1990) (citing *Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1428 (9th Cir.1985) (quoting *Coen v. Zick,* 458 F.2d 326, 329 (9th Cir.1972) ("The exception is measured by the nature of the act. . . . *All liabilities resulting therefrom are non-dischargeable.*") (emphasis added)). Thus, the debtor's actions created a realm of debt which included the litigation costs incurred by the creditor in the prior litigation. Where a debtor's actions lead to obligations determined to be non-dischargeable, the entire realm of debt must be non-dischargeable. One commentator states the principle practically:

> If the nondischargeable debt is based on a prior court judgment that includes attorney's fees, the attorney's fees awarded by the prior court *are part of the nondischargeable debt.*

2 HOWARD J. STEINBERG, BANKRUPTCY LITIGATION § 13.49 at 493 (1992) (emphasis added) (citing *Klingman v. Levinson,* 66 B.R. 548, 557–58 (Bankr.N.D.Ill.1986), *aff'd,* 831 F.2d 1292 (7th Cir.1987)).[11]

■ Literally speaking, there is no ancillary debt/underlying debt bifurcation in this position. The debt for fees and costs *is* a debt for a non-dischargeable act or matter. *See, e.g., Green v. Pawlinski (In re Pawlinski),* 170 B.R. 380, 391–93 (Bankr.N.D.Ill. 1994). Thus, the opinion in *Pawlinski* states:

> Courts which have determined that double damages or punitive damages may be included as part of the non-dischargeable debt have correctly held that *the word 'debt' used in § 523(a) has been defined broadly to include such awards.*

*Id.* (emphasis added) (citing *Ehlenbeck v. Patton (In re Patton),* 58 B.R. 149, 151 (W.D.N.C.1986)); *Leeb v. Guy (In re Guy),* 101 B.R. 961, 996 (Bankr.N.D.Ind.1988). For example, under the Code, debts for fraud are non-dischargeable. 11 U.S.C. § 523(a)(2)(A) (1994). A court applying this analysis would hold that the attorneys' fees incurred during litigation over the fraud are a debt that originates in the debtor's fraudulent act. Hence, the debt for attorneys' fees is *itself* "a debt for fraud" and must be determined non-dischargeable.

### 2. "But For" Principle

■ Another similar logic within the status dependant doctrine incorporates a "but for" analysis. "But for" the act which gave rise to the non-dischargeable debt, there would be no liability for attorneys' fees. The attorneys' fees are " 'a direct consequence' of the debtor's improper actions and, as such, must also be determined non-dischargeable." *Safeco Ins. Co. v. Orrick (In re Orrick),* 51 B.R. 92, 96 (Bankr.N.D.Okla.1985). *E.g., Texas Venture Partners v. Christian (In re Christian),* 111 B.R. 118, 122–23 (Bankr. W.D.Tex.1989); *Adams v. Zentz (In re Zentz),* 157 B.R. 145, 149 (Bankr.W.D.Mo. 1993) (Dischargeability of debt for attorneys' fees depends upon "whether the attorney fee debt was a result of that willful and malicious conduct."). *See also Cablevision Sys. Corp. v. Cohen (In re Cohen),* 121 B.R. 267, 272 (Bankr.E.D.N.Y.1990) (". . . by virtue of the fact that Plaintiffs were forced to hire an investigative agency at substantial cost to stop the Debtor from continuing to cause Plaintiff's harm is in an injury.").

### C. Support Context

A third progeny of opinions contains discussion of the dischargeability of attorneys' fees where the underlying debt is for alimony, maintenance or support.

■ Under the Bankruptcy Code, debts to a debtor's spouse, former spouse or child that are "actually in the nature of ali-

---

11. In *Klingman,* the Seventh Circuit wrote, " 'Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status depends on that of the primary debt.' " *Klingman,* 831 F.2d at 1296 (quoting *In re Hunter,* 771 F.2d 1126, 1131 (8th Cir.1985)).

mony, maintenance, or support" are non-dischargeable. 11 U.S.C. § 523(a)(5) (1994). There are instances where analysis is necessary to determine whether a debtor's obligation is actually in the nature of alimony, maintenance or support. In an action to determine the dischargeability of this debt, the court's goal is to determine what purpose the debt was intended to serve. *See generally* 3 COLLIER ON BANKRUPTCY ¶ 532.15 (Lawrence P. King et al. eds., 15th ed. 1991). If the court determines, notwithstanding any label given to the debt, that the debt was "actually in the nature of alimony, maintenance, or support," it is not dischargeable in bankruptcy. 11 U.S.C. § 523(a)(5) (1994); *id.* (citing cases); *e.g., Sculler v. Rosen (In re Rosen),* 169 B.R. 512, 518 (Bankr.E.D.N.Y. 1994) (citing cases). For example, a monthly payment in connection with a property settlement between former spouses is not in the nature of alimony, maintenance or support; therefore, such debt would be dischargeable. *See, e.g., Rosen,* 169 B.R. at 518.

Often, attorneys' fees are awarded by courts in connection with these divorce and separation debts. When the obligor spouse later files for bankruptcy relief, these attorneys' fees, together with any costs and expenses ordered payable to the obligee spouse, former spouse or child, are routinely determined non-dischargeable upon one of two theories.

### 1. Status Dependant Doctrine within Support Context

█ Under one theory within the support context, courts subscribe to the "status dependant" doctrine described previously: The dischargeability status of the ancillary debt for costs, expenses and attorneys' fees merely depends upon whether there is an underlying debt for non-dischargeable alimony, maintenance or support. *See, e.g., Green v. Pawlinski (In re Pawlinski),* 170 B.R. 380, 391 (Bankr.N.D.Ill.1994) (The dischargeability status of ancillary obligations "depends on that of the primary debt.") (citing *Klingman v. Levinson,* 66 B.R. 548, 557–58 (Bankr. N.D.Ill.1986), *aff'd,* 831 F.2d 1292 (7th Cir. 1987); *Jennen v. Hunter (In re Hunter),* 771 F.2d 1126, 1131 (8th Cir.1985)); *Hyman and*

*Rice v. Knuppenburg (In re Knuppenburg),* 422 F.Supp. 274, 274–75 (E.D.Mich.1976) (attorneys' fees "incident" to divorce decree are non-dischargeable); *DuPhily v. DuPhily,* 52 B.R. 971, 978 (D.Del.1985) ("the dischargeability of ancillary obligations such as attorney's fees turn on the dischargeability of the underlying debt. . . .") (citing, *e.g., Chambers v. Chambers (In re Chambers),* 36 B.R. 42, 46 (Bankr.W.D.Wis.1984) ("The only question is whether 'the ancillary proceeding is sufficiently related to or connected with the primary support obligation.'") (citing cases); *MacDonald v. MacDonald (In re MacDonald),* 69 B.R. 259, 278 (Bankr.D.N.J. 1986); *Davis v. Hamanaka (In re Hamanaka),* 53 B.R. 320, 323 (Bankr.S.D.N.Y.1985)); *Sinewitz v. Sinewitz (In re Sinewitz),* 166 B.R. 786, 788 (Bankr.D.Mass.1994).

### 2. Equivalent Debt Doctrine within Support Context

█ A second line of cases within the support context sometimes finds that court-ordered attorneys' fees are themselves "actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5) (1994). *E.g., Pauley v. Spong (In re Spong),* 661 F.2d 6, 9 (2d Cir.1981) ("[M]ost States treat counsel fees as being within the definition of alimony, maintenance, and support."); *Smith v. Barbre (In re Barbre),* 91 B.R. 846, 847 (Bankr. S.D.Ill.1988) ("An award of attorney fees to allow litigation regarding support obligations on an equal basis can be said to be in the nature of support. . . .") (citing *Spong; DuPhily v. DuPhily (In re DuPhily),* 52 B.R. 971 (D.Del.1985); *In re Heverly,* 68 B.R. 21 (Bankr.M.D.Fla.1986)). The judge makes a determination that the obligation for attorneys' fees is "equivalent" to an obligation for alimony, maintenance or support, or is in fact an integral component part thereof. *E.g., Brody and Brody v. Birdseye (In re Birdseye),* 548 F.2d 321, 326 (10th Cir.1977) (attorneys' fees awarded in divorce proceeding generally treated as form of alimony that is not dischargeable) (citing cases); *Bloodworth, Smith & Biscone v. Chrisman (In re Chrisman),* 6 B.R. 339, 340 (W.D.Okl.1978) (citing cases); *Sculler v. Rosen (In re Rosen),* 151 B.R. 648, 654 (Bankr. E.D.N.Y.1993) (attorneys' fees awarded

based upon need are non-dischargeable); *Mackey v. Kaufman (In re Kaufman)*, 115 B.R. 435, 440 (Bankr.E.D.N.Y.1990) (citing cases); *Leonhardt v. Whitehurst (In re Whitehurst)*, 10 B.R. 229, 230 (Bankr.M.D.Fla. 1981); *Mahoney v. Smith (In re Smith)*, 3 B.R. 224, 230–31 (Bankr.E.D.Va.1980). This "equivalent debt" is determined to be non-dischargeable under the express language of the statute: it is a debt which is actually in the nature of alimony, support or maintenance. 11 U.S.C. § 523(a)(5) (1994).

### D. Application of the Present Facts to the Prevailing Doctrines

■ To summarize, there are (at least) three doctrines upon which courts justify holdings that court-ordered attorneys' fees, costs and expenses are non-dischargeable debts in bankruptcy: (i) the statutory/contractual basis doctrine; (ii) the status dependant doctrine (including the "but for" and "realm of debt" doctrines); and (iii) the support context doctrine (which includes the status dependant and equivalent debt doctrines).

■ The Court will first examine the facts of Debtor's case in light of the rationale of the support context doctrine. As discussed, courts have determined that a debtor's obligation for attorneys' fees and expenses may be determined non-dischargeable as a debt equivalent to one for support or maintenance. This would serve to prevent the underlying maintenance support or alimony award from being rendered inadequate. *E.g., Burns v. Burns (In re Burns)*, 149 B.R. 578, 581 (Bankr.E.D.Mo.1993). This notion is especially applicable to the instant case. Were Debtor's obligation to pay Plaintiffs $315,057.94, representing the amount of their costs, attorneys' fees and expenses, held dischargeable, while the $91,-803.19 debt for defalcation were not, the main award would plainly be inadequate.

■ Another pertinent rationale derives from the support cases and was stated by the Second Circuit:

An award of attorney's fees may be essential to a spouse's *ability to sue* or defend a matrimonial action *and thus a necessary*

under the law. Accordingly, most States treat counsel fees as being within the definition of alimony, maintenance, and support.

*Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir.1981) (emphasis added) (citing *Egan v. Lang (In re Lang)*, 11 B.R. 428, 430 n. 5 (Bankr.W.D.N.Y.1981); *Bennett v. Knabe (In re Knabe)*, 8 B.R. 53, 56 (Bankr.S.D.Ind. 1981)). In the defalcation context, an award of attorneys' fees may be no less essential to the beneficiaries' ability to sue their trustee for reprehensible actions. Under *Spong*, such attorneys' fees are "a necessary under the law." *Id.* Thus, it would be proper to hold analogously that counsel fees are "within the definition" of defalcation. *See id.*

■ We turn next to the applicability and enticing logic of the broad line of cases noted above which fall under the "status dependant" doctrine. The Court sees no reason why the status dependant doctrine cannot be applied to a case, like the one at bar, involving a non-dischargeable debt for defalcation while acting in a fiduciary capacity. "[T]he purpose of the Bankruptcy Act is to grant a discharge of honest debts to honest debtors, not to grant discharges to those who have dishonestly misappropriated funds entrusted to them." *Hamby v. St. Paul Mercury Ind. Co.*, 217 F.2d 78, 81 (4th Cir.1954). Thus, the status of an ancillary debt will simply depend upon the dischargeability status of the debtor/trustee's main obligation. Whether the main debt is dischargeable turns on whether the beneficiaries are successful in establishing that the debtor/trustee committed a defalcation while acting in a fiduciary capacity. Ancillary debts are the costs and attorneys' fees expended by the beneficiaries in litigation over the main debt. It makes sense that the dischargeability status of the ancillary debt should simply depend upon that of the main debt.

■ Within the status dependant doctrine, there is the "but for" analysis, which also applies without difficulty. Plaintiffs would not have incurred their costs, expenses and attorneys' fees but for Debtor's defalcation. The existence of the ancillary debt entirely depends upon Debtor's defalcation. To discharge an ancillary debt which would

not exist but for a non-dischargeable debt seems erroneous.

██ The other analysis under the status dependant doctrine, the realm of debts analysis, is also applicable: Plaintiffs' fees and costs are within the realm of debts that were caused by Debtor's acts of defalcation.

██ There are some final reasons that are persuasive. One rationale, given by the Fifth Circuit, focuses on the impropriety of discharging a debt which is ancillary to a non-dischargeable underlying debt. Though the Fifth Circuit employs the statutory/contractual basis doctrine, its considerations demonstrate the correctness of ruling that the dischargeability of the ancillary debt for attorneys' fees and the underlying debt should remain linked:

> [A] contrary rule sanctioning the discharge of attorney's fees on a contractual debt otherwise nondischargeable would leave dishonest debtors better off under the Code than under state law without furthering a bankruptcy policy. Accordingly, such a rule would violate the Code's underlying principle that, unless a bankruptcy reason demands it, debtors and creditors should not be treated one way under state law and another way under federal bankruptcy law. Furthermore, it would impede the Code purpose of discharging only the honest debtor from his debts.

*Jordan v. Southeast Nat'l Bank (In re Jordan),* 927 F.2d 221, 227 (5th Cir.1991) (citing *Williams v. United States Fid. & Guar. Co.,* 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *In re Garman,* 643 F.2d 1252, 1257 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981)). The *Jordan* theory is that a defendant who has been defeated after litigation has an underlying debt and, sometimes, another debt for his or her adversary's attorneys' fees. These are both state law debts. Where the underlying debt is non-dischargeable, federal bankruptcy law should not improve the judgment debtor's position by discharging the ancillary obligation. *Jordan,* 927 F.2d at 227. This is a persuasive construction consistent with fundamental precepts of bankruptcy law.

██ In addition to its goal of uniformity of laws, *Jordan's* rationale produces yet another justification for determining the attorneys' fees non-dischargeable. If federal bankruptcy law does not improve a debtor's position, the incentive to the debtor to litigate endlessly without good cause in the state court is highly curtailed. Thus, a litigant cannot *plan* to file for bankruptcy relief after his or her litigation losses, with reassuring knowledge that any court-ordered debt for the adversaries' attorneys' fees and costs will be determined non-dischargeable without regard to the dischargeability of the underlying debt. If, alternatively, the bankruptcy laws bestow this inconsistency, there is every reason to continue even frivolous litigation: All orders that the debtor satisfy the adversaries' attorneys' fees and expenses will create dischargeable debts. Any such orders will be rendered meaningless. It is more appropriate that the bankruptcy laws do not alter the state law rights and liabilities of the parties, without some demanding reason. *Jordan.* Dischargeable debts should remain dischargeable. But liabilities flowing from state court assessments of the frivolity of a litigant's case should not be discarded through discharge in bankruptcy where the litigation surrounds a non-dischargeable action or event. If a state court deems the litigation stance sanctionable, deference to that decision is proper where the main debt is not dischargeable in bankruptcy. This appropriately places the burden on the litigant to weigh the merits of its case. Bankruptcy law should not remove a litigant's duty to give suitable evaluation of the propriety of the state court litigation. State court attorneys' fees and expense awards should not be disturbed by the bankruptcy laws, absent a request from an honest debtor who seeks relief from "the weight of oppressive indebtedness and perm[ission] to start afresh free from the obligations and responsibilities consequent upon business [and other untarnished] misfortunes." *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (quoting *Williams v. U.S. Fid. & Guar. Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)).

██ Debtor does not criticize any of the doctrines discussed. Debtor's argument is

that only in the support context can ancillary debts be held non-dischargeable. An example of how Debtor conveys this belief is found in the following excerpt:

> The dischargeability of attorneys' fees assessed as part of a pre-bankruptcy judgment against the Defendant is a frequently litigated issue, typically, in connection with alimony and support obligations brought pursuant to Bankruptcy Code § 523(a)(5). In this context, "ancillary obligations such as attorney's fees and interest may attach to the primary debt; consequently their status depends on that of the primary debt." *In Re: Hunter*, 771 F.2d 1126, 1131 (8th Cir.1985). *Because the attorney's fees in such cases are viewed as being "directly related" to a custodial spouse's enforcement of his or her support rights, the Courts deny discharge to the fees with little hesitation. Long v. Long (In Re: Long)*, 39 B.R. 535 (Bankr., W.D.Ky., 1984). Thus, if the alimony or support obligations are found by a Court to be non-dischargeable, then the attorney's fees incurred in connection with that obligation are non-dischargeable as well. *Pauley v. Spong (In Re: Spong)*, 661 F.2d 6, 9–11 (2nd Cir.1981).
>
> *While this rationale makes sense in the context of alimony and support obligations, it is respectfully submitted that it possesses little application with respect to obligations arising other than in a matrimonial context.*

Debtor's Memorandum of Law 8 (emphasis added).

The excerpt is revealing. Debtor approves of the rationale that where attorneys' fees are "directly related" to a non-dischargeable debt, they should be non-dischargeable in the support context. *Id.* (in the support context, Debtor states, "this rationale makes sense").

Debtor submits that the rationale "possesses little application with respect to obligations arising other than in a matrimonial context." *Id.* But Debtor provides no argument or analysis as to how or why. *Id.* Debtor does not advise how attorneys' fees that are ancillary to a support obligation and thus "directly related," may be distinguished from attorneys' fees ancillary to a defalcation obligation.

■ Whether a debt to satisfy an adversary's litigation costs such as attorneys' fees is directly related to the underlying debt should depend on logic. The nature of the underlying debt, though relevant, should not be determinative. Regardless of the nature of the underlying debt, Debtor was involved in litigation prior to his bankruptcy case. The courts found against Debtor and also awarded costs, expenses and attorneys' fees. The underlying debts are non-dischargeable in bankruptcy. If attorneys' fees are perceived to be directly related in the support context, it is illogical to deem them not directly related in another.[12] "Related to" means connected to or associated with. RANDOM HOUSE DICTIONARY OF ENGLISH LANGUAGE 1626 (2d ed. unabridged 1987). That any orders granted by the courts hearing breach of trust and defalcation actions against Debtor do not "relate to Debtor's defalcation" is inconceivable. The Court rejects Debtor's suggestion that his debt for Plaintiffs' North Carolina and New York court-awarded fees, costs and expenses "do not constitute a debt relating to a 'defalcation.'" (Debtor's Memorandum of Law at 3.)

■ Other elements of Debtor's argument do not support discharge of his debts to Plaintiffs for their costs, expenses and attorneys' fees.[13] For example, Debtor states

---

**12.** This reasoning does not apply where the state court awarded costs, expenses and attorneys' fees as a component of the support, maintenance or alimony obligation. There, the debt is not ancillary or even related to the non-dischargeable debt, but rather is itself the main underlying debt.

**13.** Debtor raised section 523(d) of the Bankruptcy Code in opposition to Plaintiffs' assertion that his obligation for their costs, expenses and attorneys' fees should be non-dischargeable. We hold

that this section does not aid Debtor, however. Section 523(d) requires a bankruptcy judge to award attorneys' fees to a debtor where it is determined that a creditor's action to determine the dischargeability of a consumer debt "was not substantially justified." 11 U.S.C. § 523(d) (1994). The section deals with fees incurred by a debtor, rather than by the creditor. *Id.* The fees allowed are for a debtor's litigation costs before the bankruptcy judge, rather than those incurred in previous litigation in another forum. *Id.* The

that his debt for Plaintiffs' attorneys' fees, "in any event, are so excessive and unrelated to the monies sought to be recovered as to shock the conscience and mandate that they be discharged." (Debtor's Memorandum of Law at 3.) The Court is unaware of any mandate that the size of a debt dictates its discharge in bankruptcy. Debts above a certain amount are not more appropriately dischargeable than lesser debts. Moreover, the reasonableness of the amount of the awards was litigated, adjudicated, decided and affirmed upon appeal. *See infra* Section IV.

■■■ The Court also discards Debtor's statement that Plaintiffs seek to bar Debtor's "constitutional right to a discharge." (Debtor's Memorandum of Law at 6.) "[A]ny creditor may file a complaint to obtain a determination of the dischargeability of any debt." Fed.R.Bankr.P. 4007(a) (1994). A debtor has no constitutional or fundamental right to a discharge in bankruptcy. *E.g., United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973); *In re Garland,* 428 F.2d 1185, 1188 (1st Cir.1970), *cert. denied,* 402 U.S. 966 (1971); *In re Pimpinella,* 133 B.R. 694, 697 (Bankr.E.D.N.Y. 1991); *see also In re Tabibian,* 289 F.2d 793, 795 (2d Cir.1961). The relief of a discharge in bankruptcy "is a privilege [and] not a right and should inure only to the benefit of the honest Debtor." *Pimpinella,* 133 B.R. at 697 (citing *Scarsdale Nat'l Bank and Trust Co. v. Switzer (In re Switzer),* 55 B.R. 991, 997 (Bankr.S.D.N.Y.1986)).

The North Carolina and New York state court decisions clearly held that the beneficiaries of the Trusts were not to bear their own litigation costs. *E.g., Freer v. Weinstein,* Index Nos. 86–SP–417, 86–SP–418 (Super. Ct., Mecklenburg Cty., N.C.), Judgment dated July 24, 1987 at 7 (Gray, J.) ("The Court finds and concludes the evidence against [Debtor] was overwhelming, that he

was defending these petitions in bad faith and for his personal motives...."); *Wachovia Nat'l Bank & Trust Co., N.A. v. Weinstein,* Index No. 6975/92 (N.Y.Sup.Ct., Nass. Cty.1992), memorandum decision at 6 (Roncallo, J.) (Attorneys' fees are assessed against Debtor "in view of the extraordinarily difficult and expensive obstacles [Debtor] has erected in an effort to frustrate both the restraining notice and the North Carolina judgment and order....").

■■■ In the Court's view, Congress has statutorily listed certain debts which cannot be discharged by filing for bankruptcy relief. 11 U.S.C. § 523(a) (1994). We believe that it is proper to determine non-dischargeable those debts which originate in and are caused by such delineated actions. In the language of the statute, there is no discharge "for *any debt* ... for fraud or defalcation while acting in a fiduciary capacity." *Id.* § 523(a)(4) (emphasis ours). The attorneys' fees, expenses and costs owed to Plaintiffs are a debt imposed against Debtor for his defalcation.

Arguments on Debtor's behalf are few. His actions bred this and other courts' rulings. The theme that the bankruptcy discharge is a privilege available to the honest debtor must subsist.

Therefore, based upon the sound reasons given by other courts, and upon the entire foregoing discussion, the Court holds that Debtor's liability for all of Plaintiffs' pre-bankruptcy litigation costs, expenses and attorneys' fees is non-dischargeable. We need only address Debtor's criticism of the amount.

## IV. Amount of Attorneys' Fees, Costs and Expenses

Debtor argues that the "staggering total of $455,000" in attorneys' fees is unreasonable given the nature of the proceedings and the amount originally involved. (Debtor's Mem-

action must be one to determine dischargeability of consumer debts. *Id; see, e.g., FCC Nat'l Bank v. Friend (In re Friend),* 156 B.R. 257, 262 (Bankr.W.D.Mo.1993) (elements of section 523(d) award) (citing cases); *Chevy Chase, F.S.B. v. Kullgren (In re Kullgren),* 109 B.R. 949, 953 (Bankr.C.D.Cal.1990) (same). None of these factors are present at bar: Plaintiffs' dischargeability action at bar is substantially justified; it does

not concern consumer debts; and it focuses upon Plaintiffs' costs and fees, not Debtor's. We hold that section 523(d) is inapplicable where it is the creditor making the request for fees, where the fees derive from litigation not before the bankruptcy judge, where the debt at issue is not a consumer one, or where the creditor's action was substantially justified. *Id.*

orandum of Law at 6.) Debtor's assertion is refutable. We address first the $315,057.94 in attorneys' fees and costs taxed against Debtor by the North Carolina courts.

The reasonableness of the amount of attorneys' fees awarded against Debtor was explicitly considered and held to be reasonable by the North Carolina trial court, in detailed fashion:

> In addition to all of the above, in arriving at the reasonableness of fees, the Court has given careful consideration to the customary rate for such services in the community, the fact that the litigation was complex, the reasonable overhead of lawyers in the community, the size of the estates and trusts, the work reasonably required to be done in representation of a particular client, the ability and/or likelihood of the trustee to pay the judgment and costs including reasonable attorneys fees, the experience of the individual attorneys in the case, and the reasonable time required to perform the services. In arriving at reasonable fees the Court also reviewed and considered the 1987 North Carolina Bar Association Economic Survey for attorneys' fees, and law clerk and paralegal fees for cities having a population of over 100,000.
>
> In view of all of the foregoing findings and considerations the Court concludes that the following fees for the following named firms are fair and reasonable under all of the circumstances....

*Freer v. Weinstein,* Index Nos. 86–SP–417, 86–SP–418 (Super.Ct., Mecklenburg Cty., N.C.), Order dated June 7, 1989 at 3 (Gray, J.); *see also id.,* Orders dated December 31, 1990, January 5, 1991 and January 18, 1991 (Gray, J.) (finding amounts of costs, fees and expenses reasonable with similar prudence). The order providing the amount of fees and costs assessed against Debtor was affirmed upon appeal. *See Freer v. Weinstein,* Index Nos. 86–CVS–3913, 86–SP–417, 86–SP–418 (Sup. Ct. Mecklenburg Cty., N.C.), Order dated December 31, 1990, at 2 (Gray, J.) (discussing procedural history of Debtor and beneficiaries' litigation).

■ Moreover, the amount and reasonableness of attorneys' fees, expenses and costs assessed against Debtor constitutes a segment of a final judgment which Debtor is collaterally estopped from disputing. 28 U.S.C. § 1738 (1994); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); *see, e.g., Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981) (final judgment may not be altered even if wrong); *Heiser v. Woodruff,* 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic,* 825 F.2d 692, 694 (2d Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Kohn v. Leavitt–Berner Tanning Corp.,* 157 B.R. 523, 526 (Bankr.N.D.N.Y.1993). A bankruptcy court may not be used to relitigate issues resolved by final judgment, unless the judgment was procured through fraud. *Heiser,* 327 U.S. at 736, 66 S.Ct. at 857–58. Thus, Debtor may not contest the reasonableness of these fees before this Court. Any attack upon the amounts must be made by motion, appeal or otherwise, in the North Carolina court system.

■ Debtor furthermore claims that he is entitled to a credit against the $91,803.19 original underlying judgment of the North Carolina court. As covered in the facts, Debtor removed $25,000 from the Trusts to pay the law firm of Robinson, Bradshaw & Hinson who were to represent him personally in the action to remove him as trustee. Once Debtor was removed as trustee, Wachovia National Bank, the successor trustee of the Trusts, sued the law firm for improperly advising Debtor that he could remove this sum from the Trusts for his personal defense. Robinson, Bradshaw & Hinson settled Wachovia's action by paying $12,500. The settlement agreement provided that should Wachovia Bank be successful in collecting more than $12,500 from Debtor, the additional amount would be paid back to Robinson, Bradshaw. Debtor's contention is that he should receive a credit for $25,000, or, alternatively, for the $12,500 received by the Trusts from the law firm. Debtor's logic

is that his liability to the Trusts for the $25,000 removed should be reduced by Robinson, Bradshaw's restoration of $12,500 of that amount. Analysis reveals that the logic is without merit.

■ This Court cannot simply "re-open" the North Carolina cases to alter their decisions to allow for "credits" to the amounts for which Debtor is liable. Our holding is that the debts originating from the state courts are not dischargeable through Debtor's bankruptcy case. If the amounts of these debts fluctuate, Debtor's recourse is presumably to seek modification of the judgments or orders in the state courts from which they were rendered. Final state court judgments may not be altered by a federal court (absent fraud). *E.g., Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427–28, 69 L.Ed.2d 103 (1981) (final judgment may not be altered even if wrong); *Heiser v. Woodruff*, 327 U.S. 726, 736, 66 S.Ct. 853, 857–58, 90 L.Ed. 970 (1946); *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir.1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 652 (1988); *Kohn v. Leavitt–Berner Tanning Corp.*, 157 B.R. 523, 526 (Bankr.N.D.N.Y.1993).

■ As to the attorneys' fees relating to the litigation in New York,[14] Debtor is correct in pointing out that the fees have never been fixed by the New York Supreme Court. It is also true that both New York judgments are the subjects of currently pending appeals which have been stayed by the Debtor's bankruptcy case pursuant to section 362 of the Bankruptcy Code. 11 U.S.C. 362(a) (1994); *In re Capgro Leasing Assocs.*, 169 B.R. 305, 310–11 (Bankr.E.D.N.Y.1994) (debtor's own appeal stayed by bankruptcy petition) (citing cases).

■ The fact that New York court orders requiring Debtor to pay his adversaries' fees and costs is within a stage of appeal does not alter our duty to give effect thereto. "The federal rule is that the pendency of an appeal does not suspend the operation of an otherwise final judgment as res judicata or collateral estoppel.…" 1B MOORE'S FEDERAL PRACTICE ¶ 0.416[3.—2] & n. 1 (James Wm. Moore ed., 2d ed. 1993) (citing, *e.g., Huron Holding Co. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 61 S.Ct. 513, 85 L.Ed. 725 (1941); *United States v. International Bd. Teamsts.*, 905 F.2d 610 (2d Cir.1990)). *E.g., Webb v. Voirol*, 773 F.2d 208, 211 (8th Cir. 1985) (citing, *e.g., Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497–98 (D.C.Cir.1983); *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 595 (7th Cir.1977), *vacated on other grounds*, 435 U.S. 992, 98 S.Ct. 1642, 56 L.Ed.2d 81 (1978); *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 n. 2 (1st Cir.1977); *Sternberg v. St. Louis Union Trust Co.*, 66 F.Supp. 16, 19 (E.D.Mo.1946), *aff'd*, 163 F.2d 714 (8th Cir.), *cert. denied*, 332 U.S. 843, 68 S.Ct. 267, 92 L.Ed. 414 (1947)). On this issue, New York's collateral estoppel rule is equivalent to the federal rule. *See generally* DAVID D. SIEGEL, NEW YORK PRACTICE § 444 at 676 (2d ed. 1991).[15] Thus, Debtor is prohibited from arguing that the pendency of appeals of the New York judgments and/or orders should bar a declaration by this Court that such obligations are nondischargeable. As stated, we determine that

---

**14.** The New York litigation involved setting aside the 1986 conveyance of Debtor's home to his wife and domestication of the North Carolina orders/judgments in New York to facilitate collection of the debts. All litigation was resolved in favor of the plaintiffs against Debtor.

**15.** On New York's law regarding the finality of a judgment which may still be appealed, Professor Siegel's treatise provides:

> The fact that the time in which to appeal the judgment is still open or, indeed, that an appeal has in fact been taken and is pending, does not divest the judgment of its finality in New York. The judgment is still entitled to its res judicata effect.…

DAVID D. SIEGEL, NEW YORK PRACTICE § 444 at 676 (2d ed. 1991) (citing *Parkhurst v. Berdell*, 110 N.Y. 386, 18 N.E. 123 (1888)). *See also* 73 N.Y.JUR 2D §§ 358 ("[I]n New York … the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding."); *id.* § 360 ("A judgment, until reversed, is conclusive between parties to the record upon all matters directly adjudicated, and so long as the judgment is in force it must be deemed to have determined the parties' respective rights, and the courts are bound to give effect to the determination.") (citing *Williamsburgh Sav. Bank v. Bernstein*, 277 N.Y. 11, 12 N.E.2d 551 (1938)).

the debt is non-dischargeable. The proper forum for calculation of the amount of this debt is the New York trial courts and appellate levels thereof. For the same reason that we may not alter the amount, *e.g., Federated,* 452 U.S. at 398, 101 S.Ct. at 2427–28 (final judgment may not be altered even if wrong); *Heiser,* 327 U.S. at 736, 66 S.Ct. at 857–58; *Kelleran,* 825 F.2d at 694; *Leavitt–Berner Tanning Corp.,* 157 B.R. at 526, we will not determine the amount.

The Court holds, accordingly, that all attorneys' fees, costs and expenses assessed to Debtor are non-dischargeable obligations pursuant to section 523(a)(4) of the Bankruptcy Code and all authorities cited.

## V. Applicability of Summary Judgment and Conclusion

■ The instant Adversary Proceeding by Plaintiffs generated no issues of fact. All factual matters were litigated and decided by prior courts. Before the Court were only the legal determinations whether Debtor's actions constituted a defalcation while acting in a fiduciary capacity within the meaning of section 523(a)(4) of the Bankruptcy Code, and whether certain of his obligations are dischargeable in bankruptcy. Where solely legal issues are before a court on a motion for summary judgment, the court's only task is to determine whether the moving party should be awarded judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c) (1994). *E.g., Block v. Biddle,* 36 F.R.D. 426, 429–30 (W.D.Pa.1965) (Where there is no necessity to submit questions of fact to jury, it is within province of court to declare the law applicable to such facts.) (citing *St. Louis Fire & Marine Ins. Co. v. Witney,* 96 F.Supp. 555 (M.D.Pa. 1951)).

Plaintiffs are entitled to judgment as a matter of law for all the reasons set forth in the above analysis. Accordingly, Plaintiffs'

motion for summary judgment is **GRANTED;** all debts owed by Debtor to Plaintiffs pursuant to the parties' North Carolina and New York state court litigation are **NON–DISCHARGEABLE.** Plaintiffs shall file a proposed **JUDGMENT** for presentation to the Court on November 25, 1994, on seven calendar days' notice to Debtor, providing that the debts deriving from the North Carolina and New York state court litigation have been determined non-dischargeable.

**SO ORDERED.**